[S. F. No. 5932. In Bank.—January 8, 1912.]

## IMPERIAL WATER COMPANY, NO. 1, Petitioner, v. BOARD OF SUPERVISORS OF IMPERIAL COUNTY et al., Respondents.

IRRIGATION DISTRICT—ORGANIZATION UNDER ACT OF MARCH 31, 1897—
REVIEW ON CERTIORARI.—A board of supervisors, in taking the various steps required of it for the organization of an irrigation district under the act of March 31, 1897, and the amendatory act of 1911, (Stats. 1897, p. 254; Stats. 1911, p. 509), exercises judicial functions, and its action therein is subject to review on *certiorari.*

ID.—CREATION OF DISTRICT BY LOCAL BOARD—PROCEEDING IS JUDICIAL.—
Where the legislature delegates the power to create such a district to a local board, and in a proceeding before such board a public notice is required to be given, and a hearing of objections or protests to the contemplated action is provided for, and the order to be made thereon

is one which affects the property or rights of the citizen, the proceeding is usually held to be judicial and subject to be reviewed on *certiorari.*

ID.—ADEQUATE REMEDY AT LAW—ACTION TO DETERMINE VALIDITY OF BONDS OR ASSESSMENT.—The action authorized by sections 68 to 72 of the act, to be brought by the board of directors of the district, or by any person whose property is assessable by the district, to determine the validity of any district bonds or assessment, does not afford such a plain, speedy, and adequate remedy to determine the question of the validity of the organization of the district, as to prevent the remedy by the writ of *certiorari* to review the proceedings for its organization.

ID.—UNCONSTITUTIONALITY OF INDEPENDENT SECTION OF ACT DOES NOT INVALIDATE ACT.—The unconstitutionality of section 4 of the act, purporting to provide for a remedy by appeal to the superior court of the county from the order of the board of supervisors calling an election to determine whether the district shall be organized, does not render the entire act void. That section and the other parts of the act are easily separable, and the provision for an appeal is not essential to the validity of such other parts.

ID.—LEGISLATIVE CONSTRUCTION OF ACT.—That the legislature did not consider section 4 of the act so vital to the scheme that the law would not have been enacted without it is shown by the fact, that after that section had been held unconstitutional in 1909, the legislature has passed acts either amending or supplementing it.

ID.—NOTICE OF PRESENTATION OF PETITION TO SUPERVISORS—SIGNATURES OF PETITIONERS.—Under section 2 of that act, it is not necessary to the jurisdiction of the board of supervisors, that the notice of the time of the presentation of the petition for the organization of the proposed district should be signed by all the petitioners therefor. If any signatures thereto are necessary, it is sufficient if the notice is signed by some of the petitioners in behalf of all.

ID.—STATEMENT OF WHEN PETITION WOULD BE PRESENTED—MEETING OF BOARD.—Such notice need not specifically state that the petition will be presented at a "meeting" of the board of supervisors. A statement that it would be presented to the board at a particular hour of a specified day, which was a day for a regular meeting of the board sufficiently complies with the statutory requirement that the notice shall state "the time of the meeting" at which it will be presented.

ID.—NOTICE SIGNED BY SOME OF PETITIONERS FOR ALL.—Under the statute, a notice authorized by the petitioners and purporting to be signed by some of them for all, and regularly published as required by the act, is valid, whether the purported signatures thereto were actually written by the petitioners or some other person by their authority.

ID.—DUE PROCESS OF LAW—CONSTITUTIONAL LAW—FORM OF NOTICE.— It was not essential to due process of law that such notice should be signed by the petitioners, and the fact that section 2 of the act dispenses with such requirement does not render the act unconstitutional. All that is required, in order to constitute due process of law, is that such a notice shall be given as, under the circumstances, would have a reasonable tendency to apprise the parties interested of the nature of the proceeding and the time and place of the hearing.

ID.—PROOF OF NOTICE—AFFIDAVIT OF PUBLISHER.—The affidavit of the publisher of the newspaper in which publication of the notice and petition was made was competent and sufficient evidence thereof.

ID.—GENUINENESS OF SIGNATURES—EVIDENCE NOT MADE PART OF RETURN ON CERTIORARI.—Upon a review on *certiorari*, where there is no charge that the signatures to the petition are not genuine, the mere fact that the evidence upon which the board found their authenticity is not made a part of the return and was not incorporated into the record in detail, is a wholly insufficient basis upon which to declare that the proceedings are invalid.

ID.—OWNERS OF POSSESSORY RIGHTS TO LAND MAY BE PETITIONERS.—The legislature being the sole judge of the propriety of the formation of such districts, it may, after proper notice and hearing, authorize the initiatory proposal to be made by such persons as it sees fit, and may make the owners of mere possessory rights to land by entry under the United States or this state eligible as petitioners.

ID.—ORDER ESTABLISHING BOUNDARIES OF DISTRICT—INCLUSION OF TRACTS NOT DESCRIBED IN PETITION.—The fact that the order of the board providing for the organization of the district included certain tracts of land of relative insignificant proportions that were not within the boundaries described in the petition, will not have the effect to invalidate the proceedings as to a person in no way interested in such lands, and whose own lands were properly included in such boundaries.

ID.—CONFLICTING EVIDENCE AS TO JURISDICTIONAL FACTS—REVIEW ON CERTIORARI.—In *certiorari*, the reviewing court will not consider the weight of conflicting evidence as to jurisdictional facts given before the tribunal whose action is sought to be reviewed, and will not require any further return or continue the proceeding to allow any further presentation thereof.

APPLICATION for a Writ to review the acts of the Board of Supervisors of Imperial County in the organization of an irrigation district.

The facts are stated in the opinion of the court.

R. D. McPherrin, and Hunsaker & Britt, for Petitioner.

Phil D. Swing, District Attorney, Conklin & Brown, and John M. Eshleman, for Respondents.

SHAW, J.—A writ was issued by this court to review the acts of the board of supervisors of Imperial County in the organization of an irrigation district under the act of March 31, 1897, and the amendatory act of 1911. (Stats. 1897, p. 254; Stats. 1911, p. 509.) A return having been filed, the cause was argued and submitted upon a demurrer to the complaint, a motion to quash the writ and the return.

1. The defendants claim that the writ of review will not lie, for the alleged reason that the board of supervisors, in organizing the district under the statute, was not exercising judicial functions. Such writ cannot be issued to review the proceedings of the board except when it is exercising judicial functions and has exceeded its jurisdiction in that respect, and there is no appeal, or, in the judgment of the court, any other plain, speedy, and adequate remedy. (Code Civ. Proc., sec. 1068.) The argument is that the act of creating such a public corporation or taxing district is a legislative act and not a judicial proceeding.

It is not disputed that the mere creation of a district of this character is a legislative act. (See *Glide* v. *Superior Court,* 147 Cal. 21, [81 Pac. 225]; *In re Madera Irr. Dist.,* 92 Cal. 308, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675]; *Potter* v. *Santa Barbara Co.,* 160 Cal. 349, [116 Pac. 1101].) The legislature may either create such corporations itself by a statute passed without any formal notice or hearing, or it may delegate the power to some local board. (*People* v. *Sacramento Drainage Dist.,* 155 Cal. 386, [103 Pac. 207]; *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 174, [41 L. Ed. 369, 17 Sup. Ct. 56].) It does not follow, however, that where the legislature delegates such power to a local board and provides that it can be exercised only upon certain conditions and upon the ascertainment of certain facts by such board, after a notice and hearing to parties interested, that the proceeding thus authorized is not of a judicial character. Although such boards do not have the character of an ordinary court of law or equity, they frequently are required to exercise judicial functions in the course of the duties enjoined upon them. In *Robinson* v. *Board,* 16 Cal. 208, the court says: "It is sufficient if they are

invested by the legislature with power to decide on the property or rights of the citizen. In making their decision they act judicially whatever may be their public character." There are many decisions to the same effect. (*People* v. *Supervisors,* 8 Cal. 61; *People* v. *Supervisors,* 10 Cal. 344; *Eldorado* v. *Elstner,* 18 Cal. 149; *Murray* v. *Board,* 23 Cal. 494; *Miller* v. *Board,* 25 Cal. 97; *Keys* v. *Marin Co.,* 42 Cal. 254; *Smith* v. *Strother,* 68 Cal. 196, [8 Pac. 852]; *Wulzen* v. *Board,* 101 Cal. 24, [40 Am. St. Rep. 17, 35 Pac. 353].) Where in a proceeding before such a board a public notice is required to be given, and a hearing of objections or protests to the contemplated action is provided for, and the order to be made thereon is one which affects the property or rights of the citizen, the proceeding is usually held to be judicial and subject to be reviewed on *certiorari.* It is sufficient to come within the purview of the writ if such proceedings are of a judicial nature and are exercised by a *quasi* judicial body. (6 Cyc., 752; 4 Ency. of Plead. & Prac., p. 74.)

The proceeding provided for by the act comes clearly within these definitions. Section 1 designates the persons who may initiate the proceeding before the board. (Stats. 1911, p. 509.) Section 2 provides that such proceeding shall be begun by a petition presented to the board, signed by the required number of persons, representing the majority in value of the land, and setting forth the boundaries of the proposed district and the source of the water supply. (Stats. 1911, p. 509.) The petition, together with a notice of the time of the meeting at which it will be presented to the board, must then be published for two weeks. At that time the supervisors must hear the same. They may change the boundaries as deemed advisable by including or excluding territory therefrom, but they must not exclude land irrigable from the proposed source, or include land which will not be benefited by irrigation therefrom. Any person whose lands may be irrigated from the proposed source may, in the discretion of the board, have such lands included within the district. The board must hear all relevant and competent evidence offered, and thereupon determine whether or not the petition is signed by a majority in number of the holders of lands within the proposed district susceptible of irrigation from the same source or system, and whether or not the lands held by such signers represent a ma-

jority in value of such lands within the district.    (Sec. 3.) They must also determine the genuineness of the signatures to the petition and the sufficiency of the publication made.    If all these facts are determined in favor of the petitioners, the board may then make an order fixing the boundaries of the district and calling an election to submit to the voters within the territory thus fixed the question whether the same shall be organized as a district under the law.    (Sec. 6.)    If the election is favorable, the board shall then make an order declaring the territory organized as an irrigation district.

This scheme presents all the usual elements of a judicial proceeding, the notice, the hearing, the taking of evidence, and the judgment.    The privilege of using a portion of the water from a common source upon a particular tract of land is one which directly and materially affects the value of the land, and is clearly a property right of great value.    The right to be excluded from the burdens which the construction and operation of the waterworks will impose upon property within such a district is also a property right.    By this act the legislature has committed to the board of supervisors the power to determine and dispose of these rights.    The decision of such a matter, after notice and a hearing is clearly the exercise of a judicial function.    The circumstance that the facts are to be established as a foundation upon which the subsequent legislative act of creating a public corporation is to be based, does not destroy the judicial character of the determination nor take away the fact that it does affect private property injuriously or beneficially as the case may be.    It is, therefore, a proceeding subject to be reviewed in *certiorari.*

Sections 68 to 72 of the act authorize an action by the board of directors of the district, or by any person whose property is assessable by the district, to determine the validity of any district bonds or assessment.    It is suggested that in this action the validity of the organization of the district would be in issue and that the action is a plain, speedy, and adequate remedy to accomplish the end here sought.    The board cannot bring such action until after the election is held and the district is organized.    The property-owner cannot do so until thirty days after the bonds are issued or the assessment levied, and then only when the board has not brought such action.    These sections do not purport to authorize any inquiry into the proceedings

for the organization of the district.  The action is authorized solely for the purpose of inquiry into the validity of the bonds or assessment of the district.  Section 72 provides that "No contest of anything or matter herein provided shall be made other than within the time and manner herein specified."  If the validity of the organization of the district could be questioned at all in such an action, it would clearly be a collateral attack and the only point of inquiry would be the sufficiency of the notice and petition.  The provisions of this act are not similar to those of the so-called Wright Act of 1887 [Stats. 1887, p. 29] and the act supplementary thereto [Stats. 1889, p. 212], providing for a proceeding to test the validity of bonds.  This supplementary act expressly provided that in such action the court should have power to determine the validity of all the proceedings for the organization of the district.  No such provision is contained in the act here under consideration.  The action provided for cannot be deemed a plain, speedy, or adequate remedy.  Section 4 of the act was intended to give a remedy upon these questions by appeal to the superior court of the county from the order of the board calling the election.  This section, however, has been declared unconstitutional.  (*Chinn* v. *Superior Court,* 156 Cal. 479, [105 Pac. 580].)  No adequate remedy for an attempt to exercise this power remains except the writ of *certiorari.*

2. It is claimed that the invalidity of section 4 providing an appeal to the superior court of the county to review the initiatory order, renders the entire act void.  Petitioner here invokes the rule that where valid and void provisions of an act are so dependent on each other that one cannot stand and have the effect intended, without the other, or where the invalidity of the provision is so important that it will be presumed that the legislature would not have enacted the valid part alone, the entire act must fall.  The first reason for this rule does not here exist.  The two parts of the act are easily separable and the provision for an appeal was not essential to the validity of the other parts of the act.  The legislature, as we have seen, had power to create such districts, or authorize their creation by the board of supervisors, without providing for a review of the preliminary determination as to the facts.  The second reason for the rule,—namely, that the legislature would not have enacted the valid part of the act alone does not have its

foundation in any restriction or limitation of the constitution. It is a mere rule of construction applied for the purpose of ascertaining the true intent of the legislature with respect to the valid portions of the act. Whatever force this consideration may have had when the act was passed, we think it is entirely removed by a legislative construction evidenced by subsequent legislation. At every session of the legislature since its original enactment, the act has been amended or supplemented. The decision holding section 4, providing for an appeal, unconstitutional, was made and published on November 19, 1909. It is well known that a number of districts had been organized under the act upon the supposition that it was valid. The legislature is, of course, presumed to have knowledge of the decision holding section 4 unconstitutional. With that knowledge the legislature of 1911 again amended and supplemented the act. The act of March 9, 1911, provides that all bonds theretofore regularly issued by any such district and duly registered as therein prescribed, shall be legal investments for public funds, private trust funds, and certain corporate funds. (Stats. 1911, p. 322.) The act of March 26, 1911, amends sections 1, 2, 15, 15½, 17, 30, 32, 34, 39, 55, and 61, and adds thereto a new section. (Stats. 1911, p. 509.) It shows a legislative revision of the entire act and it clearly implies that the legislature deemed the remaining portions of the act valid and did not consider section 4 so vital to the scheme that the law would not have been enacted without it. It is not to be construed as having the effect of a re-enactment of the entire act. In that case the act, if void before, would be in force only after such revision. It is, in effect, a declaration of the legislative department of the state government that section 4 was not considered a vital or necessary part of the plan of the original act and that, notwithstanding the invalidity of that section, the remainder of the act was deemed to have been valid from the beginning. In view of this legislative declaration and construction and the further consideration that the provisions of section 4 were not necessary to make the remainder of the act constitutional, we are of the opinion that the invalidity of that section does not affect the remainder of the act. It has been so decided by this court in Bank in *In re Bonds of South San Joaquin Dist.,* 161 Cal. 345, [119 Pac. 198].

3. The complaint in this proceeding having served its purpose by virtue of the issuance of the writ of review and the return having been filed in this court, it becomes unnecessary to consider the demurrer to the complaint or the motion to quash the writ, unless we shall conclude that the return fails to show jurisdiction in the board of supervisors to make the order, or is otherwise insufficient. We will now proceed to consider the sufficiency of the return.

Section 1 of the act provides that the organization of such irrigation districts may be proposed by persons holding title, or evidence of title, to lands within such proposed district, provided such lands are susceptible of irrigation from a common source by the same system of works. A holder of possessory rights by entry under the United States or this state is declared to be a qualified person to propose such district. Lands not irrigable as above stated are not to be considered. A sufficient number of persons must join in the proposition to constitute a majority, in number, of the total number of persons holding title to such irrigable lands situated within the proposed boundaries, and the lands of that character owned by such proposers must comprise a majority, in value, of such lands within the district, according to the valuation shown by the last preceding equalized assessment-roll. Section 2, as before stated, provides that such proposal shall be by petition to the board of supervisors of the county. The return includes all the papers on file and the minutes of the board, together with the documentary evidence taken by the board at the hearing. It is supplemented by a statement of the subjects to which the oral testimony taken at the hearing related and avers that such testimony was not taken down in shorthand and that no record thereof was preserved.

Objection is made to the notice of the time of the presentation of the petition. The first objection is that it was not signed by all the petitioners. The answer is that the statute does not so require. Furthermore, a clause of section 2 declares that "no defect in the contents of the petition or in the title or form of the notice or signatures, or lack of signatures thereto, shall vitiate any proceeding thereon; provided such petition or petitions have a sufficient number of qualified signatures attached thereto." A large number of the petitioners appear to have signed the notice as published, the notice

stating that they signed on behalf of all the petitioners. If any signatures are necessary, under the clause quoted, it is clearly sufficient if the notice is signed by some of the petitioners in behalf of all.

Another objection is that the notice does not state that the petition will be presented at a meeting of the board. It states that the "foregoing petition" will be presented to the board of supervisors of Imperial County at the court house thereof, on Monday, June 5, 1911, at ten o'clock A. M.. That day was, in fact, a day for a regular meeting of the board. The statute provides that the petition shall be presented to the board at a regular meeting of that body, but with respect to the notice it provides only that it shall state "the time of the meeting" at which it will be presented. The board is not a board except while it is in session; at all events, it is not such for the purpose of receiving petitions. The notice given substantially complies with the provisions of the act concerning it.

With respect to the genuineness of the signatures to the notice, we think the issues tendered did not require proof thereof. It is not claimed that the notice was unauthorized by the petitioners. Under the statute, a notice authorized by the petitioners and purporting to be signed by some of them for all, and regularly published as required by the act would be valid, whether the purported signatures of the petitioners thereto were actually written by the petitioners or some other person by their authority.

A further claim is made that the above quoted clause of the act makes the whole law unconstitutional. It is argued that it authorizes a notice without any signatures thereto, and that due process of law by constructive service requires that the notice published shall be signed by some officer or actor. In support of this proposition *In re Central Irr. Dist.*, 117 Cal. 382, [49 Pac. 354] is cited. That decision is not in point. It had to do with the Irrigation Act of 1887, which simply provided that a notice of the time of the meeting should be published. This was held to mean a notice signed by the petitioners. That act did not contain any clause declaring that a lack of signatures should not vitiate the proceedings. The case is no authority on the question of the meaning of a law declaring that signatures are not essential. It does not discuss at all the question whether due process of law can be had without a

signed notice. We know of no authority to the effect that a signature to the published notice is a necessary part of such process, where the only notice given or required is a publication in a newspaper. The substantial thing is that such notice shall be given as, under the circumstances, would have a reasonable tendency to apprise the parties interested of the nature of the proceeding and the time and place of the hearing. (*Lent* v. *Tillson,* 72 Cal. 413, 419, [14 Pac. 71].) If its contents are such that one reading it would understand that it was given by those who intend to apply for the relief indicated, the authorization thereof would be sufficient. The notice here given consists of the petition itself, with all the petitioners' names, followed by the notice, as above stated, purporting to be signed by a large number of petitioners. It is clearly sufficient to inform all persons of the nature of the proceeding, the time and place of hearing, the property affected, and the persons who are the actors.

The proof of the publication of the notice and petition was made by the affidavit of the publisher of the newspaper in which it was made. This was competent and sufficient evidence thereof. (Code Civ. Proc., sec. 2010.)

When the petition was presented to the board on June 5th it made an order appointing F. N. Payton to compare the signatures to the petition with the names on the last assessment-roll of the county, for the purpose of verifying the sufficiency of the petition as to the number and qualifications of the petitioners. The hearing was continued to June 10th. Payton then made and filed his affidavit stating facts showing that the petition was signed by a sufficient number of qualified persons, both with regard to their number and the value of the lands owned by them. The affidavit also states that he testified before the board to the same facts. The order of the board recites that witnesses were sworn and testified before the board at the hearing and that therefrom the board found that the petition was signed by the requisite majority of landowners, both in number and value. This finding implies that the signatures to the petition were genuine and that the evidence taken was directed to that question. The complaint under which this proceeding in review was issued does not aver that any of the signatures to the petition were false or forged, or that the persons making them were unauthorized to sign for the

owners of the land in cases where the signature was by agent. The plaintiff appeared before the board at the hearing and made various objections to the sufficiency of the petition and the qualifications of the signers thereto, but it did not dispute the authenticity of the signatures. We may assume for the purposes of this consideration that a finding in the record upon a question which affects the jurisdiction of a tribunal may on *certiorari* be disputed by evidence *dehors* the record. There are authorities holding that this cannot be done. (*Los Angeles* v. *Young*, 118 Cal. 298, [62 Am. St. Rep, 234, 50 Pac. 534].) But whether this is the true doctrine or not, it must be conceded that upon a review on *certiorari*, where there is no charge that the signatures to such a petition are not genuine, the mere fact that the evidence upon which the court found their authenticity is not made a part of the return and was not incorporated into the record in detail, is a wholly insufficient basis upon which to declare that the proceedings are invalid. Under these circumstances we must presume that the authenticity of the signatures was sufficiently established by the proof before the board.

There is no merit in the claim that there were not a sufficient number of qualified petitioners. If, as is claimed, town lots are not irrigable and the owners thereof not eligible as petitioners, the only result would be that the six hundred town-lot owners, alleged to have signed as petitioners, must be rejected from both sides of the calculation. In that event, the remaining petitioners would still constitute a majority, in number and value, of the landholders within the district having land of the character designated in the act as necessary to qualify such petitioners.

The objection that owners of possessory rights cannot be made eligible petitioners is untenable. The legislature is the sole judge of the propriety of the formation of such districts. The question of procedure is a matter of legislative policy. Conceding that a notice and hearing are required, under the authorities, it is nevertheless clear that the legislature may authorize the initiatory proposal to be made by such persons as it sees fit. (*In re Madera Irr. Dist.*, 92 Cal. 320, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675].)

It is claimed that the order of the board is void because it includes certain tracts of land not within the boundaries de-

scribed in the petition. The statute expressly gives power to the board to include such lands in the district as finally established, provided the lands so included will be benefited by irrigation from the system of works contemplated by the petition. It also provides that any person whose lands are susceptible of irrigation from the source described, may upon application, in the discretion of the board, have such lands included within said proposed district. The order declares that certain lands lying outside of the original boundaries are susceptible of irrigation from the proposed source and by the same system of works and will be benefited thereby, and thereupon it declared that such lands should be included in the district and it was so ordered. The order is silent upon the question whether the owners of lands thus embraced applied to have such lands made a part of the district. It is not claimed that the present plaintiff, the Imperial Water Company No. 1, is in any way interested in said lands. They comprise a very small proportion of the district as finally established. It is unnecessary here to determine whether the owners of these lands, in case they did not consent to the inclusion thereof in the district, could have the proceedings declared void as to them, and their lands excluded from the district by any appropriate proceeding in court or otherwise. Whatever the rights of the owners thereof may be, the consideration thereof is immaterial to the present case. The complainant has no right to invoke aid from them and no right to represent them here. The lands comprise so insignificant a portion of the district that the exclusion thereof from the legal boundaries would not be sufficient to nullify the order providing for the organization of the district.

4. A motion was made to require the defendant to make a further return by certifying a statement of all the testimony and evidence produced and received before the board at the time of the hearing. This motion was not presented to this court upon the argument. It is not claimed that the oral testimony if produced would do anything more than present a conflict of evidence as to the facts necessary to establish jurisdiction. The authenticity of the signatures not being disputed, it is unnecessary, upon this hearing, to produce the evidence establishing that fact. Upon the issues made, the return shows that there was enough evidence before the board

to establish the necessary facts.  It is settled law that in *certiorari* the reviewing court will not consider the weight of conflicting evidence as to jurisdictional facts given before the tribunal whose action is sought to be reviewed (*Golden Gate M. Co.* v. *Superior Court,* 65 Cal. 189, [3 Pac. 628]; 6 Cyc. 824), and no good end would be secured by requiring any further return or in continuing this proceeding to allow any further presentation thereof.  The motion will be denied.

We find no other questions which we think of sufficient importance to notice.  It appears that the board of supervisors had jurisdiction to make the order complained of and that the board was acting in pursuance of a constitutional law.

It is ordered that the proceedings be affirmed and the writ discharged.

Angellotti, J., Henshaw, J., Lorigan, J., Melvin, J., and Sloss, J., concurred.

Rehearing denied.