[Sac. No. 2017.  In Bank.—April 12, 1913.]

## L. HUNTLEY, Petitioner, v. BOARD OF TRUSTEES OF THE CITY OF AUBURN et al., Respondents.

TAXATION — MUNICIPAL CORPORATION — INCREASE OF ASSESSMENT BY BOARD OF EQUALIZATION—NOTICE OF PROPOSED INCREASE—JURISDICTIONAL PREREQUISITE.—The board of trustees of the city of Auburn, a municipality of the sixth class, sitting as a board of equalization, had no authority, under section 872 of the Municipal Corporation Act and section 28 of Ordinance Number 6 of the city, to arbitrarily increase an assessment of property as made and returned by the city assessor, without first giving the person assessed notice in advance of their proposed action. Such a proper notice is a jurisdictional prerequisite to the right of the board of equalization to proceed at all in the matter of the raising of assessments.

ID.—INSUFFICIENT NOTICE—NOTICE AFTER RAISE OF ASSESSMENT.—A notice to the person assessed, dated September 11, 1911, after the assessment had actually been raised, reading, "the assessment of your property has been raised by the city board of equalization as follows: (giving description of property, amount of original assessment in numbers and the amount to which the assessment has been raised in numbers). The board of equalization will be in session at eight P. M., September 25, 1911, at the city offices, to adjust all asssessments where cause is shown," is insufficient to give the board jurisdiction of the matter of raising such assessment.

ID.—CONSTRUCTION OF NOTICE—REFERENCE TO OTHER MINUTES OF BOARD. Such a notice cannot, in connection with other minutes of the board, of which the property owner had no knowledge and with which he was not charged with notice, be construed as a mere notification that the board proposed to raise the assessment and would hear evidence upon the mater pro and con on the future date specified in the notice.

ID.—ESSENTIALS OF NOTICE.—In the matter of raising assessments by a board of equalization notice is jurisdictional to the right of the board to proceed. Such notice must be a notice of the intended action of the board, and, in the absence of a controlling statute fixing the time of notice the property owner must be given time to have and must have a full and fair hearing.

APPLICATION for a Writ of Certiorari to review an order of the board of trustees of the City of Auburn, sitting as a board of equalization, increasing an assessment of real property.

The facts are stated in the opinion of the court.

Meredith & Landis, for Appellant.

W. B. Lardner, City Attorney, and A. C. Lowell, for Respondents.

HENSHAW, J.—A writ of review was sued out in the district court of appeal of the third appellate district, under which writ it was sought to have declared null and void an order of the trustees of the city of Auburn, a municipality of the sixth class, sitting as a board of equalization, increasing the assessment of real property of the petitioner over and above the valuation placed thereon by the assessor of the city. From the decision given by the court of appeals a hearing before this court was ordered.

Admittedly the order was made and the assessment of petitioner's property was increased five hundred per cent over and above the assessment made by the city assessor to the city's board of equalization. The charter of the city of Auburn is found in the Municipal Corporation Act. [Stats. 1883, p. 93.] By section 877 of that act it is made the duty of the city assessor to make his assessment, verify his list under oath and deposit it with the city clerk on or before the first Monday of August in each year. In the case at bar the verified petition asserts that this duty was performed by the city assessor and this is admitted. By section 872 of the Municipal Corporation Act it is declared that the board of trustees, sitting as a local board of equalization "may of their own motion raise any assessment upon notice to the party whose assessment is to be raised." Ordinance No. 6 of the city of Auburn provides, in section 28, as follows:

"During the session of the board, it may direct the assessor to assess any taxable property that has escaped assessment; or to add to the amount, number or quantity of property, when a false or incomplete list has been rendered and to make and enter new assessments (at the same time canceling previous entries) when any assessment made by him, is deemed by the board so incomplete as to render doubtful the collection of the tax. But the clerk must notify all persons interested by letter deposited in the post-office or express, postpaid, and addressed

to the person interested, at least ten days before action taken, of the day fixed, when the matter will be investigated.''

The petition also charges that the board of trustees of the city of Auburn sitting as a board of equalization ''did on or about the 7th day of September, 1911, raise or attempt to raise and increase the said valuation placed by said city assessor upon said property of the said petitioner.'' The petition further avers that no notice was given of the intent or proposal of the board of equalization to raise the assessment upon petitioner's property, other than a notice dated September 11, 1911, after the assessment had actually been raised, which notice was addressed to petitioner, deposited in the mail, and is in the following form: ''The assessment of your property has been raised by the city board of equalization as follows: (here follows description of property, amount of original assessment in numbers and the amount to which the assessment has been raised in numbers). The board of equalization will be in session at eight P. M., September 25, 1911, at the city offices, to adjust all assessments where cause is shown. By order of the city trustees, L. F. Morgan, City Clerk.'' These allegations are established.

So plain is the law that upon these undisputed facts there would seem to be but one solution to the inquiry,—namely, that the board of equalization had exceeded its powers in arbitrarily increasing the assessment upon petitioner's property without notice to him in advance of their proposed action, as required by section 872 of the Municipal Corporation Act and section 28 of Ordinance No. 6 of the city. But respondent asks this court to hold that this increase in the assessment amounted to nothing more than an authorization of certain changes in the assessment as originally prepared by the city assessor and presented to the board of equalization; that by these changes in the assessment-roll the board of equalization did not on the seventh day of September, as declared in the notice, and in its record, increase the assessment, but that the board at this time merely approved the changes in the assessment-roll which theretofore it had authorized the city assessor to make; that the notice above quoted, mailed upon September 11th, stating that the city board of equalization *had* raised the assessment on the property, is to be construed as a notification merely that the board *proposed* to raise the assessment

and would hear evidence upon the matter pro and con on September 25, 1911.

From the record, it is argued, it appears that in fact the board did not raise the assessment upon September 7th, as the notice to this petitioner declares was done, but did fix a time for a future meeting "in order," so runs the record, "to give all the above taxpayers a chance to show cause why their assessment should not be raised to the figures given"; that further, by the record it is disclosed that upon the days appointed certain taxpayers (though not this petitioner) did appear, and that, at the conclusion of the meeting on September 25th, the day on which the petitioner had been invited to appear and show cause, and after all the taxpayers who had appeared had been heard, a motion was carried that "the assessments be fixed by the board as adopted at said meetings." And, finally, upon October 9th, the record shows that a motion was made and carried "that the assessed valuations be accepted as they now stood after the changes made by the board." From all this, as has been said, it is argued that this court should hold that the assessments were not in fact raised until after notice and an opportunity of hearing given to petitioner. But all these references to the record of the board, beg the whole and sole question in the case. That question is: Was the notice given to this petitioner sufficient in law? That a proper notice is a jurisdictional prerequisite to the right of the board of equalization to proceed at all in the matter of the raising of assessments is well established. (*Allison etc. Min. Co.* v. *County of Nevada,* 104 Cal. 161, [37 Pac. 875] ; *Farmers etc. Bank* v. *Board of Equalization,* 97 Cal. 325, [32 Pac. 312].) It is wandering far away from the question to argue that the minutes thus show that the board had not in fact raised the assessment, but merely contemplated making such raises after notice. These minutes indicated nothing to this petitioner, who knew nothing of them, and was not charged with any notice or knowledge of them. His rights, we repeat, are to be measured solely by the sufficiency of the notice which was sent to him, and under that notice, and as the first and controlling declaration of that notice, he was told not that the board contemplated raising the assessment, but that the assessment had already been raised. To say that the subsequent declaration, to the effect

that the board would give him an opportunity to show cause why the "raise" should not again be "lowered," forced this petitioner to construe the notice as declaring that the assessment had not been raised, but might be if he did not show cause to the contrary, does plain violence to the plain meaning of plain language. If a court, without obtaining jurisdiction of the person of a defendant—even a justice's court where liberality in pleadings is indulged, should notify him that judgment had been rendered against him, but that upon a certain day he might appear and show cause why the judgment should not be vacated, we would have this very matter presented by a parallel which would be unimpeachable. Would any one say he would be obliged to pay any attention to such a notice, or that it could be distorted to mean that if he did not appear a judgment would be entered against him; or that he could be charged with notice of what the justice's docket actually did contain?

It is further argued that mere informalities in the record of the proceedings for assessment of taxes "if the jurisdiction or power exists" are not sufficient to invalidate them. This is very true. But this attack goes not to an informality in the record of the proceedings as was the case in the authorities cited, but it goes to the very jurisdiction of the board to do the thing, its jurisdiction to raise the assessment being entirely dependent in law upon a timely and proper notice of the board's intent so to do. Thus in *Le Grange etc. Min. Co.* v. *Carter,* 142 Cal. 562, [76 Pac. 241], the notice was given and properly given, and was a notice "to show cause why his assessment upon particular property described should not be raised from the assessment stated to a much larger sum specified, due notice of the hearing of which was given." The attack there made was not upon the notice, but it was upon the sufficiency of the record in the minutes after notice and hearing, and the holding was simply that the imperfection in the order entered upon the minutes was not fatal to the action of the board in raising the assessment.

In *Savings and Loan Society* v. *San Francisco,* 146 Cal. 679, [80 Pac. 1086], there was once more no question of the sufficiency of the notice. There the party had been cited before the board of equalization by a timely and proper notice to show cause why its assessment should not be increased. The

plaintiff was before the board and the proposed changes in the assessment were submitted to it and it failed to show cause why the amended assessment should not be adopted and its assessment thereby increased. There the taxpayer had received the notice, had appeared, and the question which this court considered and decided was whether, having so received its notice and having so appeared, the changes which the board made were justified. The same is true of *Farmers etc. Bank* v. *Board of Equalization*, 97 Cal. 325, [32 Pac. 312]. The notice in that case, addressed to the plaintiff, was as follows: "You are hereby notified to appear before the board of equalization of the city of Los Angeles on Wednesday, the twelfth day of August, 1891, at ten o'clock A. M., in the council chamber in the city hall, and show cause why your assessment on solvent credits should not be increased from $2774 to $275,000."

To work out from these cases and the notices set forth in them, a judicial determination that the notice here given shows a compliance with the law, involves reasoning to follow which we confess our utter inability.

The true rule governing the form of the notice to the taxpayer and of the proceedings under it, is that laid down in *Spring Valley W. Works* v. *Schottler*, 62 Cal. 103. In the Spring Valley case the notice was attacked for the shortness of time allowed the property owner in which to appear in response to it. In *Allison etc. Min. Co.* v. *Nevada County*, 104 Cal. 161, [37 Pac. 875], the notice was in the following form:

"A. E. Davis, owner of the Allison Ranch mine, in Grass Valley township, is hereby cited to appear and show cause why the assessment on said mine should not be raised from $12,000 to $25,000." The argument was made that the notice was not given to the proper person, as it was not shown by the record of the board that Davis, who appeared in response to the motion, was in fact the owner of the mine. But in answering this it is said that liberality is allowed to boards of equalization in the keeping of their records and minutes, and they may have taken proof *aliunde* that Davis was the president, secretary or managing agent of the owner and appeared on the owner's behalf. Then is quoted the language of *Spring Valley W. Works* v. *Schottler*, 62 Cal. 103, as follows: "In our opinion (as intimated in *Patten* v. *Green*, 13 Cal. 330)

such tribunals as the boards of supervisors ought not to be
held to any great strictness of procedure in the matters above
discussed herein, and if, under a rule or an order of such
boards, a party has notice of the intended action of a board
of supervisors, sitting as a board of equalization, in regard to
the assessment of his property, in time to have a full and fair
hearing during the sessions of the board, we will hold such
notice to be sufficient, unless it appears affirmatively that a
full and fair hearing was denied him by the action of the
board." It thus appears that where the question of notice
has been directly under review it has been the decision of this
court: 1. That the notice is jurisdictional to the right of the
board to proceed; 2. That it must be a notice "of the intended
action of the board"; and, 3. That in the absence of a control-
ling statute fixing the time of notice the property owner must
be given time to have and must have a full and fair hearing.

Again, we repeat that a notice to a property owner that
the board has, in advance of notice to him, already acted and,
in advance of notice to him, has already raised the assessment
upon his property, is not a permissible notice under our law.

Wherefore it follows that as the notice to this petitioner
was insufficient to authorize the board of equalization of the
city of Auburn to increase petitioner's assessment, the increase
of the assessment is invalid and is annulled.

Lorigan, J., Melvin, J., and Beatty, C. J., concurred.

SHAW, J., dissenting.—I dissent from the judgment an-
nulling the order for increase of the petitioner's assessment.
The claim is that the increase was made by the board of
equalization without giving him any notice thereof as required
by section 872 of the Municipal Corporation Act and without
affording him any hearing on the question.

Upon the filing of the petition in the district court of appeal
an order was made for the issuance of an alternative writ of
review, requiring the respondents to show cause on a day
stated why the alternative writ should not be made final. The
respondents filed in that court an answer to the application
and also a return containing a copy of the record of the pro-
ceedings of the board of equalization which are sought to be
reviewed. We cannot take the failure in the answer to the
original application to deny averments therein as an admis-
sion of the facts not denied. The application and answer

served their purpose when they resulted in the making of a
return of the record sought to be reviewed. The only matters
we can consider here are the record included in the return
and such evidence as may properly be introduced upon the
question of the jurisdiction of the tribunal whose proceedings
are under review. The inquiry is confined to the question of
its jurisdiction and power to act in the matter. The evidence
to be considered is the evidence which was introduced before
the tribunal in question and such evidence should be included
in the return either as originally filed or as amended under
the order of the reviewing court. The rule is that where the
record speaks, its statements are conclusive, but if it is silent
on any point, the evidence shown by the return to have been
taken by such tribunal on the subject may be considered, but
evidence *dehors* the record is not admissible to contradict it.
These propositions are settled by the following decisions:
*Whitney* v. *Board of Delegates*, 14 Cal. 500; *Hoffman* v. *Su-
perior Court*, 79 Cal. 476, [21 Pac. 862] ; *Pedrorena* v. *Su-
perior Court*, 80 Cal. 145, [22 Pac. 71] ; *Borchard* v. *Board
of Supervisors*, 144 Cal. 14, [77 Pac. 708] ; *Los Angeles* v.
*Young*, 118 Cal. 298, [62 Am. St. Rep. 234, 50 Pac. 534] ;
*Schwarz* v. *Superior Court*, 111 Cal. 112, [43 Pac. 580] ; *Rey-
nolds* v. *County Court*, 47 Cal. 605; *Imperial W. Co.* v. *Board
of Supervisors*, 162 Cal. 22, [120 Pac. 780] ; *Roe* v. *Superior
Court*, 60 Cal. 93; 4 Ency. of Plead. & Prac. 277, 286; 6 Cyc.
822.

The board met as a board of equalization on August 21,
1911. Notice of that meeting was duly given by a general
notice published in a newspaper. On that day the board in-
structed the assessor and tax-collector to prepare an abstract
of the city assessment-roll for the use of the board. There-
after, the board adjourned from time to time until September
7, 1911. The minutes of the last named date contain the fol-
lowing statement: "The following raises in the assessment-
roll for the year 1911 were approved by the board." Then
follows a list giving the property assessed, the names of the
owners respectively, the amount of the original assessment
and the amount of the raise, naming about 200 taxpayers.
The minutes then proceed as follows: "The board then
decided to meet at 8:00 P. M., Thursday, Sept. 21, 1911;
Friday, Sept. 22, 1911, and Monday, Sept. 25, 1911, in order

to give all the above taxpayers a chance to show cause why their assessment should not be raised to the figures given. The city clerk was instructed to send notices to all the above named property owners, showing the amount their respective assessments were raised to and what the raise was on. The clerk was instructed to divide the cards so that about an equal number would be instructed to appear on each of the above mentioned dates." Thereupon the clerk issued and mailed the notices, that to the petitioner being as follows:

"Notice to Taxpayers.

"Auburn, California, September 11, 1911.

"The assessment on your property has been raised by the City Board of Equalization, as follows:

"L. Huntley: (Here is inserted a description of the lots, the amount of the original assessment of each lot, and the amount to which each was raised.)

"The Board of Equalization will be in session at 8 P. M., Sep. 25, 1911, at the city offices to adjust all assessments where cause is shown.

"(Signed) L. F. Morgan, City Clerk.

"By order of the City Trustees."

The petitioner did not appear on September 25, 1911, or at all, before the board, although it is conceded that he received the notice in time to have appeared and objected. The board heard objections from some forty-three taxpayers of the city and after several adjournments and the making of a number of reductions in proposed "raises," the hearings were concluded on October 9th, at which time the minutes show that the following occurred: "Trustee Davis moved that the assessed valuations be accepted as they now stood after the changes made by the board. The motion was seconded by Trustee Predom and carried unanimously."

It is a general rule, even in the absence of a statute, that mere informalities in the record of proceedings for the assessment of taxes, if the jurisdiction or power exists, are not sufficient to invalidate them. (*La Grange etc. Co. v. Carter,* 142 Cal. 562, [76 Pac. 241].) Where the board or officer has power to do the act, the language in which the action is recorded will not be construed strictly for the purpose of holding the proceedings invalid. The court should endeavor by a view of the entire proceedings to ascertain to a common cer-

tainty what was done by such board, and if, with reasonable certainty, it appears that it was acting within its powers and regularly according to law, the proceedings will not be invalidated merely because the words used to describe the acts are not strictly and technically correct, or not as accurately expressive of the intent as other words which might have been used if the orders had been drawn by one well versed in the use of language. As was said in the case just cited, if the courts were to adopt a strict rule of construction, with respect to boards of equalization and other inferior tribunals, "and hold them to exact and apt expressions framed in proper legal terms and set aside all acts not so expressed, it would result in nullifying most of the acts of such boards." In that case an order stating that the assessment of the company, naming it, "stand as raised," but not otherwise describing the property or stating the amount to which it was raised, or declaring that it was raised, was held sufficient, when explained by reference to a preliminary order to show cause, in which the description and proposed increase were set forth. In *Savings & Loan Soc.* v. *San Francisco,* 146 Cal. 679, [80 Pac. 1089], it was said that a notice to a taxpayer to show cause why its "assessment" should not be increased, was sufficient to authorize the board to add other property thereto. In *Farmers etc. Bank* v. *Board of Equalization,* 97 Cal. 325, [32 Pac. 312], a notice to "show cause why your assessment on solvent credits should not be increased from $2,774 to $275,000," was held to authorize the addition of other property to the assessment, as well as an increase of the valuation of that already listed.

Measured by the rules established by these decisions I think the proceedings of the board and the notice given show a compliance with the provision of the Municipal Corporation Act authorizing a board of equalization to raise an assessment upon notice to the property owner. It is evident from the entire record that the "raises," so-called, originally made by the board, were not intended as the final action of the board, but were made provisionally until a hearing could be had, and for the purpose of stating the amount as a proposal to the taxpayer which he could submit to or appear and object to, as he might desire. After the raises were approved by the board on September 7th it proceeded to fix the times and

place when and where the taxpayers were to be given, as the minutes state "a chance to show cause why their assessments should not be raised to the figures given." The clerk was directed to send notices accordingly. This plainly indicates that the "raises" previously made were not then finally adopted by the board, but were only proposed increases to which the taxpayers should have an opportunity to object, but which were not to become final, if at all, until after any objections made should be duly considered and either allowed or overruled. There can be no doubt that the actual proceedings and intent of the board were in all respects in accordance with the statute.

The real objection is that the notice sent to the respective property owners did not sufficiently inform them of the facts. But this objection disregards the aforesaid rules applying to proceedings of this character. The notice clearly informed the property owner that he would have an opportunity to object to the proposed assessment at the time and place stated. While the opening clause declares that the assessment "*has been* raised," the concluding clause informed him that the board would be in session at the time stated, "to adjust all assessments where cause is shown." This clearly means that he would have an opportunity to then and there show cause why the assessment should not be raised to the figure named, and to make any objection which he might have to make thereto and that the same would be adjusted after hearing and considering such objections. While it did not expressly declare that the increase was only a proposed increase, it did not declare that it was final, and it did advise him that he would have the opportunity to be heard and give evidence to prevent his assessment from being raised to the figure stated. He could not reasonably have believed otherwise. In fact, the assessment was not finally approved until after the time when he might have appeared and objected. He did not choose to attend at the time specified or to make any showing. The notice was in ample time to enable him to appear if he so desired and was sufficient to inform him that he might have done so. Having neglected to appear, I think the sound rule is that he should be bound by the order.

The objection that no evidence was taken goes to the proposition that the board did not take evidence aside from the

knowledge of its members, as to the value of the property. This is an inquiry into the merits of the decision upon which the order was based and not as to the jurisdiction therefor. The rule is settled that in *certiorari* the reviewing court will not consider the merits of the judgment or order reviewed. (See cases first above cited; also *Winter* v. *Fitzpatrick*, 35 Cal. 272; *Central Pac. R. R.* v. *Placer County*, 43 Cal. 367; *Quinchard* v. *Board of Trustees*, 113 Cal. 668, [45 Pac. 856].) The statute empowers the board to raise assessments "of its own motion" and it does not require that the evidence of value shall be recited in its orders. In *Farmers' etc. Bank* v. *Board of Equalization*, 97 Cal. 325, [32 Pac. 312], the court said that where there is jurisdiction of the person and subject matter, the sufficiency of the evidence on the merits is not open to question. I am of the opinion that the record shows no defect sufficient to justify a judgment annulling it.

Angellotti, J., and Sloss, J., concurred.