[L. A. No. 1422.  Department One.—March 15, 1904.]

T. K. VERNON, Appellant, v. BOARD OF SUPERVISORS OF COUNTY OF SAN BERNARDINO, Respondent.

Municipal Corporation Act—Legislative Power of Supervisors—Power of Repeal and Rescission.—The power devolved on boards of supervisors by sections 2 and 3 of the Municipal Corporation Act to determine boundaries of a proposed town is a legislative and not a delegated power, and in the absence of any statute or rule limiting its powers its legislative power includes the power of repealing and rescinding its previous acts while the proceedings are *in fieri,* and before rights have become vested under the act, or the town has been declared duly incorporated.

Id.—Protest against Proposed Boundaries—Resolution—Order for Election—Mistake—Rescission—Readjustment of Boundaries.—Where protests were made against being included in the boundaries proposed in a petition for the incorporation of a town, and the protests and petition were submitted together to the board for its decision, and the supervisors had intended to exclude the protestants from the boundaries, but afterwards upon an *ex parte* showing by the petitioners were led to believe that the protestants had abandoned their protests and had consented to be included, and under that mistake and misapprehension passed a resolution fixing the boundaries as prayed for and ordering an election, the board may at its next meeting, upon notice to the petitioners, rescind its resolution and order a further consideration, and may pass another resolution excluding the protestants from the boundaries of the proposed town.

Id.—Absence of Further Showing—Dismissal of Petition.—Where the petitioners made no further showing as to whether a sufficient number were included in the readjusted boundaries to authorize an incorporation, the petition was properly dismissed.

Id.—Election Held under Rescinded Order—Mandamus.—Where an election was held under the order therefor, notwithstanding the rescission of the order, and notice to the officers of election that it would not be held, *mandamus* will not lie to compel the supervisors to canvass the votes.

APPEAL from a judgment of the Superior Court of San Bernardino County.  Benjamin F. Bledsoe, Judge.

Henry M. Willis, and C. E. Sumner, for Appellant.

The power of the board of supervisors was a delegated power, and when exercised could not be rescinded or revoked.

(*Doctor* v. *Hartman,* 74 Ind. 221; *City of Madison* v. *Smith,* 83 Ind. 502, 512; *Weir* v. *State,* 96 Ind. 311, 313; *Board* v. *Logansport etc. Co.,* 88 Ind. 189; 1 Dillon on Municipal Corporations, sec. 314; *Belser* v. *Hoffschneider,* 104 Cal. 455, 461; *Riverside County* v. *San Bernardino,* 134 Cal. 517; *McConoughey* v. *Jackson,* 101 Cal. 265;[1] *State* v. *Board of Education,* 35 Ohio St. 368-386.) The board could not revoke the appointment of election officers. (*People* v. *Woodruff,* 32 N. Y. 355, 363; *Mayor, etc., of New York* v. *Butler,* 1 Barb. 325; *State* v. *Barbour,* 53 Conn. 76.[2])

L. M. Sprecher, District Attorney, and Henry Goodcell, for Respondent.

The board had power to rescind its votes or orders while they remained unexecuted. (1 Dillon on Municipal Corporations, 4th ed., sec. 290; *Burkett* v. *Board, etc.,* 18 Cal. 703; *People* v. *Common Council of Rochester,* 15 Lans. 11; *Estey* v. *Starr,* 56 Vt. 690; *Ross* v. *Stackhouse,* 114 Ind. 200; *Trustees of School District* v. *Wimberly,* 2 Tex. Civ. App. 404.)

SMITH, C.—This is a proceeding for a writ of *mandamus* to compel the defendant to canvass the returns of an election held for the incorporation of the town of Upland and the election of its first set of officers. Defendant had judgment, from which plaintiff appeals.

The facts are presented by the findings and the admissions of the pleadings, and, so far as material, are as follows: The petition for the incorporation of the town, which was in due form, and signed by the requisite number of resident electors, was presented to the defendant, after due publication, at its regular meeting of March 10, 1902. Protests were filed by numerous persons residing in the part of the proposed town lying north of Eleventh Street, and at a regular meeting of the board, held April 8, 1902, the case was heard, and submitted for decision, but taken under advisement until the next meeting, to be held April 14, 1902. On that day the petitioners appeared again before the board, and in the absence of the protestants, and without notice to them, were permitted to make a further showing. The result was, that an order was made, as provided in section 2 of the Municipal Cor-

---

[1] 40 Am. St. Rep. 53.        [2] 55 Am. Rep. 65.

poration Act, defining the boundaries of the proposed town, so as to include the lands of the protestants, and providing for an election, to be held May 16, 1902, for the purposes named in the statute. Notice of election was accordingly published, and the election officers notified. But by a resolution passed, after due notice to the petitioners, at the next regular meeting of the board, April 28, 1902, and afterwards by a more formal resolution, passed May 12, 1902, after hearing the parties, the order of April 14th was rescinded, and the matter of the incorporation reopened for further consideration. Finally, on the next day, a resolution was passed defining the boundaries of the proposed town, so as to exclude the lands of the protestants, and—after reciting that no evidence had been offered as to the number of inhabitants within the boundaries established, and that the petitioners declined to offer any such evidence—further ordering that the petition for the incorporation of the town of Upland be dismissed, and the order for election rescinded. The election officers were accordingly notified of the proceedings and directed not to hold the election, but the election was nevertheless held on the day appointed, and returns made to the county clerk. The refusal of the board to canvass these returns is the action of the board complained of; and the question involved is as to the validity of the resolutions of the board rescinding its prior resolution of April 14th.

The power devolved on boards of supervisors by sections 2 and 3 of the Municipal Corporation Act to determine boundaries of a proposed town is legislative in its nature, and is vested in the board not as an indifferent party, but as the legislative body of the county whose territory is to be taken for the proposed town; and consequently as representing the interests of the people of the county at large as well as those of the town. (1 Dillon on Municipal Corporations, secs. 182, 183.) Nor is the power thus given to such boards a *delegated* power. It is a power which under the provisions of section 6 of article XI of the constitution cannot be exercised by the legislature, but must be exercised by subordinate bodies, of which the legislative bodies established by the constitution for the government of counties will be the most appropriate. (*People* v. *Town of Nevada,* 6 Cal. 143, 144.) The case, therefore, would seem to come within the well-established rule

which accords to municipal corporations the right "at any time before the rights of third persons have vested, . . . if consistent with its charter and rules of action, to rescind previous votes and orders" (1 Dillon on Municipal Corporations, sec. 290; *Burkett* v. *Board, etc.,* 18 Cal. 703; *Estey* v. *Starr,* 56 Vt. 693, 694, and cases cited); and *a fortiori* this would seem to be true of boards of supervisors in this state. For here county governments, and boards of supervisors as the proper legislative bodies thereof, are provided for by the constitution (Const., art. XI, secs. 1, 3, 5; *People* v. *McFadden,* 81 Cal. 497, 498[1]), and though the legislative powers of such boards are those only that are granted to them by law either expressly or by implication, yet within these limits they are of essentially the same nature as those of the state legislature; and hence the maxim will apply: *Leges posteriores priores contrarias abrogant.* Their powers will therefore include the power—unless clearly denied to them—of repealing or rescinding their previous acts (authorities *supra;* Civ. Code, sec. 3522); and in this regard there is in this state no statute or rule limiting their powers. On the contrary, by the County Government Act (sec. 24, subd. 35), the power is expressly given to such boards "to do and perform all . . . acts and things . . . which may be necessary to the full discharge of the duties of the legislative authority of the county government"; and it can hardly be doubted that the power of repeal, if not a part, is necessary to the efficient exercise of this legislative authority.

There is, no doubt,—as is urged by the appellant,—a distinction between the permanent or continuing powers of the board and those that are to be exercised once for all for a specified occasion only, as in the proceedings of the kind before us; for in the latter case the power to repeal the act after it has been finally executed is from the nature of the case clearly excluded. Hence, when the proceedings for incorporation are finally consummated, and by the appropriate order required by section 3 of the act, the city or town becomes incorporated, or perhaps when the election has been held before any rescission, there is no longer any power to rescind, and this, for the double reason that the powers granted to the board have been exhausted, and that vested rights have ac-

---

[1] 15 Am. St. Rep. 66.

crued. But until such order, or at least until the election has been held, the power of repeal continues to exist.

Nor do we think—as is also claimed by the appellant—that the language of the second section of the act can be regarded as inconsistent with the view here expressed. It is there provided that the board "on the final hearing shall make such changes in the proposed boundaries as they may find to be proper, and shall establish and define such boundaries"; and it is further provided: "The boundaries so established by the board . . . *shall be the boundaries of such municipal corporation,* until by action, authorized by law," etc., "such boundaries shall be changed." But this must be read in connection with the third section of the act, providing for the final order declaring the town to be "duly incorporated," and thus consummating the proceedings. The provision of section 2, as to the boundaries determined by the board, is, therefore, to be understood as though it read that these "shall be the boundaries of such municipal corporation," *when established;* for until then there is no corporation, and hence there can be no boundaries.

Nor is this a case where rights had vested when the repealing resolution was passed. With regard to the residents in the proposed town, it is a case not of rights conferred, but of proposed rights to take effect upon the consummation of the proceedings; and with regard to the election officers,—assuming, as we have held, that it was competent for the board to rescind the order for the election,—their employment was contingent upon the event of the board not exercising such power; and the maxim will therefore apply, that "the incident follows the principal, and not the principal the incident." (Civ. Code, sec. 3540.) Or, if otherwise, the only conclusion that could follow would be that the election officers would have their claims against the county for services they were ready to perform; for the holding of the election and the incorporation of the town would not be essential to the payment of the trifling compensation to which they might be entitled. (Pol. Code, sec. 1072.) Moreover, they were notified not to hold the election, and hence their services must be regarded as voluntary.

It may be added that the case before us presents a striking illustration of the necessity of the rule we have invoked for

its decision, and of the evil results that would follow from disregarding it. For it appears that from the proceedings taken by the petitioners in the absence of the protestants, and without notice to them, and unadvisedly permitted by the board, the members of the board—all of whom had made up their minds and intended to vote for boundaries excluding the lands of the protestants—were led to believe that the protests had been abandoned, and that the protestants were consenting to the boundaries proposed by the petitioners; and otherwise the resolution would not have been passed. The case presented is therefore that of an order made by the board, under this mistaken apprehension, which, in fact, was induced by the new and unauthorized showing made by the petitioners— who are thus seeking to gain an advantage over parties not in fault by conduct which, however intended, had the actual effect of deceiving the board. There may therefore be a question whether—assuming the general rule to be otherwise than as we have held it to be—the order of April would be itself within the jurisdiction or power of the board. (*Bixler* v. *Board, etc.,* 59 Cal. 700; *Page* v. *Board of Supervisors,* 85 Cal. 50; *Rowland* v. *Kreyenhagen,* 24 Cal. 59; *Vance* v. *Pena,* 36 Cal. 328; *Trumpler* v. *Trumpler,* 123 Cal. 252.) But this point we will leave undetermined.

We advise that the judgment appealed from be affirmed.

Chipman, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

Van Dyke, J., Shaw, J., Angellotti, J.

Hearing in Bank denied.