[Civ. No. 10976. Second Appellate District, Division One.—November 6, 1936.]

RALPH G. CRANE et al., Appellants, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF LOS ANGELES et al., Respondents.

Clark & Davidson and Harold M. Davidson for Appellants.

Everett W. Mattoon, County Counsel, and Clarence B. Penn and W. B. McKesson, Deputies County Counsel, for Respondent.

HOUSER, P. J.—In substance, it appears that in assumed compliance with statutory provisions affecting the matter, a petition for change in the boundaries of one school district that adjoined a second school district, so that a part of the area that had been included in the latter district would be taken from it and thereafter would be included within the area of the first district, came on for hearing before the respondent board of supervisors, and that thereupon the said petition was granted and an order was en-

tered in accordance therewith. Thereafter, an individual taxpayer, acting in concert with the board of trustees of the school district which, by reason of the said action of the board of supervisors, was about to lose a part of its territory, procured a writ of *certiorari* to issue from the superior court for the purpose of testing the question of the jurisdiction of the board of supervisors to make the order in question. A general demurrer to said petition was sustained by the said court; and it is from the ensuing judgment that the instant appeal is prosecuted.

The first question that requires consideration is whether an order made by a board of supervisors on a petition for change of boundaries of a school district is subject to review by the superior court through the medium of a writ of *certiorari*.

As far as is pertinent herein, in substance, section 1068 of the Code of Civil Procedure provides that a writ of *certiorari* may issue when it appears that an inferior board, "exercising judicial functions", has exceeded its jurisdiction. Under that statutory provision, if, in making its order or in adopting the resolution by which the boundaries of the school district were changed, the board of supervisors was not exercising a "judicial function", manifestly the writ of *certiorari* was improperly issued; from which it would follow that the demurrer to the petition for the writ of *certiorari* was properly sustained. In that connection, although the appellate courts of this state have not passed directly upon the precise point, in each of several opinions, in as many cases, language has been used which, in a broad and liberal construction thereof, would indicate that in exercising its functions with reference to a change in the boundaries of a school district, a board of supervisors acts in a legislative and not in a judicial capacity. For example, in the case of *Hughes* v. *Ewing*, 93 Cal. 414 [28 Pac. 1067], among other expressions relative to the question, it was said: " . . . The power to change the boundaries of the (school) district, as well as to define them in the first instance, is of legislative origin, and, whether exercised immediately by the legislature, or mediately by the board of supervisors—the local legislature—is, whenever exercised, a legislative act. . . . "

And the identical language was quoted with approval in the case of *Antelope Valley etc. District* v. *McClellan,* 55 Cal. App. 244, 247 [203 Pac. 147]. However, in its facts and in its applicable statute, neither of such cases presents a situation analogous either to the facts or to the controlling statutes which are pertinent to the instant case. In the first of the cited cases, the issue related to the legality of a school tax that had been caused to be levied by order of a board of supervisors on property that had been taken from a certain school district and added to the district as to which the tax had been levied. The authority of the board was derived from the provisions of sections, as then numbered, 1617, 1830 and 1832 of the Political Code, which in their nature were unrelated to those which pertain to the instant matter. If, in deciding the issue therein involved, the declaration of law made by the court to which attention hereinbefore has been directed was at all pertinent thereto, it nevertheless is apparent that it may not be here relied upon as controlling. In the other case, the decisive question was whether the chairman of the board of supervisors should be compelled to sign certain bonds which had been voted ''for high school purposes'', such bonds to relate to property which included area of certain intermediate school districts ''which were annexed by orders of the board of supervisors made long prior to the election at which the bonds were voted''. As in the former case, it is not apparent in what respect any question of whether the action of the board of supervisors in ordering the annexation of such intermediate school districts to the high school district was in the exercise of a judicial function, was in any way involved. Consequently, although possibly persuasive, the law there announced should be regarded as *dictum* as far as the precise point here presented is concerned.

Other than an announcement of legal principle which may or should govern a judicial determination as to whether a given action or decision by an inferior board was taken or had either in a judicial, or in a legislative, capacity, it fairly may be said that none of the other cases which are cited by respondent is particularly helpful in reaching a correct conclusion herein. On the other hand, especially in view of the provisions of the existing statutes, by virtue

of which the instant order of annexation was authorized, certain statutes and authorities to which appellant has directed attention would seem to indicate that in making its order in the premises the board of supervisors was acting in a judicial capacity. With reference thereto, the language employed in sections 2.102 and 2.151 of the School Code is as follows:

"2.102. When a petition for a change of boundaries is presented, as provided in this article, the county superintendent of schools shall examine the same and if he finds it sufficient and signed as required by law, he shall set the same for hearing by the board of supervisors at a regular meeting thereof, and shall file said petition with the board of supervisors accompanied by his recommendation thereon, and a notice containing a general statement of the purpose of the petition and of the change of boundaries, and the time and place when and where the petition will be heard."

"2.151. Upon the filing with it of the petition, the recommendations, notice and affidavit as required, the board of supervisors shall have jurisdiction to hear and determine said petition."

It thus may appear that before a board of supervisors may be qualified to make an order respecting a proposed change in the boundaries of a school district, a compliance with certain procedural conditions precedent by the county superintendent of schools, including the giving by him of a certain prescribed notice, together with his "recommendation" with respect to the granting of the petition for such change, is required. Furthermore, that a "hearing" must be had, at which time "all persons interested in the petition" are entitled to be heard. (Sec. 2.152, School Code.) Especially in view of the necessary fulfillment of the said statutory conditions precedent to the right or authority of the board of supervisors to make an order of the nature of that here under consideration, to the effect that pursuant to notice thereof, a *hearing* must be had by such board and that "all persons interested are entitled to be heard", the cases of *Imperial Water Co.* v. *Board of Supervisors*, 162 Cal. 14 [120 Pac. 780], and *Broyles* v. *Mahon*, 72 Cal. App. 484 [237 Pac. 763], are particularly applicable with reference to the point regarding the character of the

act or action of the board of supervisors in making its order.

In the first of such cases it was held that the order that was made by a board of supervisors in pursuance of the taking of each and all of the various steps that were required in the organization of an irrigation district, constituted the exercise of a judicial function, and consequently that its decision might be subject to review in *certiorari*. In that connection, in ruling upon the point then under consideration, in part the Supreme Court said:

" . . . Although such boards do not have the character of an ordinary court of law or equity, they frequently are required to exercise judicial functions in the course of the duties enjoined upon them. In *Robinson* v. *Board of Supervisors,* 16 Cal. 208, the court says: 'It is sufficient if they are invested by the legislature with power to decide on the property or rights of the citizen. In making their decision they act judicially whatever may be their public character.' There are many decisions to the same effect. (Citing authorities.) Where in a proceeding before such a board a public notice is required to be given, and a hearing of objections or protests to the contemplated action is provided for, and the order to be made thereon is one which affects the property or rights of the citizen, the proceeding is usually held to be judicial and subject to be reviewed on *certiorari*. It is sufficient to come within the purview of the writ if such proceedings are of a judicial nature and are exercised by a *quasi* judicial body. (6 Cyc. 752; 4 Ency. of Plead. and Prac., p. 74.)

. . . . . . . . . . . .

"This scheme presents all the usual elements of a judicial proceeding, the notice, the hearing, the taking of evidence, and the judgment. . . . By this act the legislature has committed to the board of supervisors the power to determine and dispose of these rights. . . . It is, therefore, a proceeding subject to be reviewed in *certiorari.*"

In the second case it was contended that an order which had been made by a board of supervisors, by virtue of which "certain named common school districts" were annexed to a high school district, "was a legislative act and not reviewable by *certiorari*". Respecting that point, in part the court said:

"It may be conceded that the creation of the proposed Chico high school district, as it will be after the annexation of the common school districts, is a legislative act; but it appears to be the law that where the legislature delegates legislative power to a local board and provides that it can be exercised only upon certain conditions and upon the ascertainment of certain facts by such board, after notice and hearing to interested parties, the proceeding thus authorized is of a judicial character which may be reviewed by writ of review. (*Imperial Water Co.* v. *Board of Supervisors*, 162 Cal. 14 [120 Pac. 780]; 4 Cal. Jur. 1074, and citations, note 19.)"

Such precedents impel the conclusion that in the instant matter the action by the board of supervisors was judicial in character.

█ In effect, the respondents herein assert that even though it be ruled that in the first instance the issuance of a writ of *certiorari* may have been available to some person or persons, neither an individual taxpayer, nor the board of trustees of a school district which was affected by the order that was made by the board of supervisors, was a proper party to the petition for the writ of *certiorari*. In that regard, the general weight of authority is to the contrary of the contention of respondents. (56 Cor. Jur. 245, 250. To the same effect, see, also, 4 Cal. Jur. 1088, and cases there respectively cited.)

█ Assuming, then, that the petitioners for the writ were properly in court, it becomes necessary to consider their several reasons for their ultimate contention, to wit, that in making the order here in question the board of supervisors acted in excess of its jurisdiction. And in that behalf, it is urged by appellants that even conceding that the board of supervisors acted in a judicial capacity, it had no authority to make the order of which complaint is made, for the reason that said board never acquired jurisdiction in the premises.

As hereinbefore has been set forth, by the terms of sections 2.102 and 2.151 of the School Code of this state, in order that "the board of supervisors shall have jurisdiction to hear and determine" a petition for change of boundaries of a school district, it is provided, not only that the county superintendent of schools shall examine the peti-

tion for the purpose of determining its sufficiency and whether it has been "signed as required by law", but also, that he shall "set the same for hearing by the board of supervisors . . . and shall file said petition with the board of supervisors *accompanied by his recommendation thereon,* and a notice", etc. In that connection, it is conceded by respective counsel herein that all such requirements were properly performed, with the sole exception that the county superintendent of schools neglected to make any "recommendation" with regard to the petition; and relying upon that defect as far as a complete compliance with the statutory provisions was concerned, appellants confidently assert that for that reason the board of supervisors never acquired jurisdiction to make the order in question.

Generally speaking, it may be conceded that when, by the terms of a statute, the performance of specified acts is required antecedent to the acquisition of jurisdiction by an inferior tribunal or board, the statutory provisions in that regard are mandatory; but it is equally true that jurisdiction may not be made to depend upon a precompliance with acts which manifestly are immaterial to the foundational elements of jurisdiction.

When the issue involves a determination of whether an inferior tribunal or board was vested with jurisdiction that is dependent upon the antecedent performance of designated acts, and the fact appears that one or more of such acts has been omitted to be performed, that fact will not necessarily be determinative of whether a decision or ruling made by such tribunal or board was void and of no effect. In other words, in such a case, although the language of the statute may be clear in its specification of that which may appear to be prerequisite to the acquisition of jurisdiction, the validity of a decision by the tribunal or board may depend upon whether the specified act constitutes a mandatory requirement. If it was directory only, manifestly the omission of performance thereof will be considered as having no effect upon the question of jurisdiction; and in reaching a conclusion of the character of such an act in that regard, the controlling principle of construction appears to be to the effect that unless the act or action properly may be regarded as "of the essence"

of the particular object sought to be obtained, or the purpose to be accomplished, the required act or action will be deemed directory only.

As inclusive abstract illustrations of the meaning of such a declaration, the authorities indicate that the specified act should be regarded as directory if it is immaterial in that its consequence amounts merely to a matter of form, possible convenience, or to expeditious or orderly "conduct of business";—and especially so when a failure of performance of such act will result in no injury or prejudice to the substantial rights of interested persons. (59 Cor. Jur. 1074; 25 R. C. L. 767; Sutherland on Statutory Construction, p. 575; *In re Johnson's Estate,* 98 Cal. 531 [33 Pac. 460, 21 L. R. A. 380] ; *Derby & Co.* v. *City of Modesto,* 104 Cal. 515 [38 Pac. 900] ; *Ryan* v. *Byram,* 4 Cal. (2d) 596 [51 Pac. (2d) 872] ; *Kavanaugh* v. *Fash,* 74 Fed.. (2d) 435; *Winston Co.* v. *Vaughan,* 11 Fed. Supp. 954.)

In the case of *Gallup* v. *Smith,* 59 Conn. 354 [22 Atl. 334, 12 L. R. A. 353], it was held that the citation by a probate judge of another judge to act in his place was valid, although the statute provided that the clerk should cite the other judge; and it was said:

"It is of course difficult to lay down a general rule to determine in all cases when the provisions of a statute are merely directory and when mandatory or imperative, but of all the rules mentioned, the test most satisfactory and conclusive is, whether the prescribed mode of action is of the essence of the thing to be accomplished, or, in other words, whether it relates to matter material or immaterial—to matter of convenience or of substance."

An excerpt from the annotation in 12 L. R. A. 354 includes the declaration that: "Provisions are directory where they relate to some immaterial matter not of the essence of the thing to be done, and where a departure from the statute will cause no injury to any person affected by it." (Citing *People* v. *Weller,* 11 Cal. 49 [70 Am. Dec. 754], and other cases.)

In the case of *State* v. *Bird,* 295 Mo. 344 [244 S. W. 938], it appears that the pertinent statute provided for posting of notices and plats of a proposed consolidated school district prior to an election, and that such notices and plats

should be signed by the county superintendent of all counties in which any part of the proposed district lay. The court held that the failure of the superintendent to sign the plats did not invalidate the election; that he signed the notices, which act constituted a substantial compliance. The court pointed out that the purpose of the statute was to give notice and information to the voters, and said:

"But it is contended that the statute by its terms is applicable to all county superintendents and is mandatory in its nature. Even if the signature of the superintendent to the notices had been omitted, as it was from the plats, the essence of the thing to be done, mainly to give notice to the people of the districts, was completely effected, and no possible injury could have resulted from the omission. However, as we have stated, the notices were signed, and this constituted a substantial compliance with the statute. Under this state of facts, there is little ground for the holding that the proviso should be construed as mandatory."

But in its facts and in the conclusions reached thereon, the case of *Clay* v. *Board of Commissioners*, (1917) 30 Idaho, 794 [168 Pac. 667], presents a situation that is not only instructive, but as well, that is directly in point on the instant issue. Therein the statute required that upon the filing of a petition for the creation of a school district, the county superintendent "must transmit the said petition to the said board (of county commissioners) with his approval or disapproval, and if he approve the same, he may note such change in the boundaries as in his judgment shall be for the best interests of all concerned". Instead of complying literally with the statutory requirements, the superintendent appeared personally before the board, and orally approved the petition and recommended some modification of the proposed boundaries. In affirming a judgment upholding the validity of a district so organized, the court, in answering a contention that the approval should have been in writing, said:

"This statute does not require the recommendation of the superintendent to be in writing. The board of commissioners is not bound by the recommendations made by the superintendent, but may act in a manner directly contrary thereto. It cannot be held that the recommendation

of the superintendent in writing is necessary to give the board jurisdiction to act.''

Reasoning from the foregoing, it should follow that in the instant matter, the statutory requirement that when the petition for change of boundaries of the school district was filed with the board of supervisors, it should be accompanied by the ''recommendation'' of the county superintendent of schools, was not ''of the essence of the thing required'', or the ruling that was sought upon the petition for change of boundaries of the school district. Manifestly, it was the bounden duty of the board of supervisors to consider all the material facts that properly might be presented to it in connection with the hearing upon the petition, and thereupon to render its decision, which might, or might not, be in accord with any ''recommendation'' with reference thereto that might have been made by the county superintendent of schools. By no means might the board of supervisors escape or evade its direct and manifest duty to itself render a judgment. In the end, the decision in the matter was its act, its final responsibility. What the county superintendent of schools may have thought about the proper disposition of the petition, or what was or might have been his ''recommendation'' with reference thereto, was wholly immaterial and of no consequence when it came to the decision to be rendered by the board. In other words, what the judgment of the county superintendent of schools with respect to either the granting, or the denial, of the petition might have been, certainly was neither of binding force, nor in anywise controlling in the premises. On hearing the facts, the board was under no compulsion to agree with his ''recommendation''. Clearly, if it were, the submission of a petition to a board of supervisors for its judgment with reference to the facts that might be adduced on a hearing would be but an empty form and purely a perfunctory act. Nor in the instant matter does it appear that, if made, the ''recommendation'' of the county superintendent of schools would not have been in entire accord with the ruling of which complaint it made. Hence, in that regard also, in line with the authorities to which reference hereinbefore has been had, the petitioners for the writ of *certiorari* in the court

below failed to make a sufficient showing for the relief which they sought.

As constituting additional reasons for a ruling by this court to the effect that the board of supervisors was without jurisdiction in the premises, and as a consequence thereof, that the judgment that was rendered by the supe- rior court should be reversed, appellants assert that when the petition for change of boundaries was called for hear- ing by said board it refused to grant a request for a con- tinuance that was made by the protestants to the granting of said petition; also, that at such hearing the said board failed to "hear" from certain persons who were present at said hearing and who desired to be heard with reference to said petition. But in that connection it should be noted that nowhere does it appear that on the occasion in question did any of such persons make known to said board any such desire on his part. However, in response to such suggestions, it should be sufficient to attract attention to the fact that neither of such points touches the question of jurisdiction. To the contrary, each of them is purely procedural; and even assuming that each of such state- ments is substantially correct in point of fact, it is well established law that such rulings would constitute error only, and that the remedy therefor, if any, may not be reached through the medium of a writ of *certiorari*.

The judgment is affirmed.

York, J., and Doran, J., concurred.