[Civ. No. 9169.   Third Dist.   Dec. 16, 1957.]

EARL McLAIN et al., Appellants, v. THE PLANNING COMMISSION OF THE CITY OF CHICO et al., Respondents.

A. John Merlo for Appellants.

John A. Sutro, Richard B. Daugherty, Malcolm M. Barrett, Pillsbury, Madison & Sutro, Price & Morony and Grayson Price for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment denying a petition for a writ of mandate by which appellants seek to compel the Planning Commission of the City of Chico to set aside its decision granting a use permit to the respondent Pacific Telephone and Telegraph Company, hereinafter referred to as respondent.

For many years the appellants have owned and occupied a residence situated on Chestnut Street between Third and Fourth Streets in the city of Chico. Directly across the street therefrom is a two-story telephone exchange building erected by respondent in 1952 or 1953. In the immediate neighborhood are a church, school, playground, and fraternity house, but the area is zoned as an R-3 residential zone restricted to single and multiple dwellings. However, under Zoning Ordinance No. 505, which was adopted by the city in 1955, the planning commission may grant use permits for churches, schools, hospitals, parks, playgrounds, public utility buildings and other nonresidential structures (§ 1787, subd.

2(b)), provided the commission finds that the permitted use will not be detrimental to the health, safety, and comfort of persons residing or working in the neighborhood nor injurious to the general welfare of the city. (§ 1787, subd. 5 (a).)

On January 30, 1956, respondent filed an application with the planning commission for a use permit authorizing construction of a 28 foot by 33 foot addition to the rear of their exchange building, setting forth that the proposed plan would "permit utilization of existing telephone plant and facilities and will not require installation of expensive additional poles, cable and other telephone facilities in connection with telephone service to the general public." At the regular February meeting of the commission officials of the respondent company appeared and stated that the commission's requirements as to parking facilities would be met, that there would be no equipment installed which would be detrimental to the neighborhood, that any additional cable would be placed underground, and that the proposed addition was necessary in order to meet the increasing demand for telephone service. After appellants voiced objections to the proposed construction, the matter was referred to the commission's zoning and permits committee for further consideration and the public hearing on the application was continued to March 12th.

At the March 12th meeting a letter from six adjacent property owners was read. They therein recommended granting of the application provided that the architectural and landscaping plans be approved by the committee, that off-street parking and loading facilities be provided and that refuse cans be enclosed within the building. An official of the respondent company agreed that the suggested conditions were reasonable and would be complied with. A discussion was then had as to how this could be accomplished. Appellants repeated their objections to the proposed addition and stated that the present building did not architecturally conform to the plans presented when a permit for its construction had been obtained. Appellants further objected to the proposed parking lot unless the respondent's employees would be compelled to use it. Action on the application was postponed until the respondent furnished further requested information.

At the next regular meeting of the commission, on April 9th, sketches of the proposed addition and parking lot were displayed and explained by representatives of the respondent. It appeared that, pursuant to the recommendations of the commission's zoning and permits committee, the respondent

proposed to have its entrance and exit open on Fourth and Third Streets and thereby eliminate any traffic problem on Chestnut Street, and the loading deck on Chestnut Street was to be moved to the Fourth Street side of the building. Discussion was had as to the type of fence that would be erected. An attorney for one of the property owners questioned the respondent's representatives as to probable increase in number of employees, the proposed location of the parking lot, and the kind of lights that would be installed. Appellants and other property owners spoke against the proposed addition, claiming that it would cause an extremely dangerous traffic situation and greatly decrease the value of residential property in the vicinity. The matter was referred back to the zoning and permits committee and the public hearing thereon was continued to April 16th.

At the April 16th meeting the commission accepted the zoning and permits committee's recommendation that respondent's submitted plan be rejected because the proposed addition, as planned, would be detrimental to the general welfare of persons residing in the area. The chairman then asked the representatives of respondent if they wished to amend the application or if they wished final action to be then taken. Respondent's representatives replied that further study would be made and an alternative plan submitted. Final action was deferred and the application tabled.

On May 24th the respondent submitted a revised plan which provided for a 72 foot by 78 foot addition and for a parking area fronting on Fourth Street. After studying the plan the zoning and permits committee sought and received further information from respondent. Thereafter, on June 4th, a special meeting was held and respondent's application for a use permit was granted. A notice of the meeting of June 4th was published for nine days prior thereto.

Appellants contend that the commission abused its discretion in granting respondent's application at the June 4th meeting because it did not proceed in the manner required by law (Code Civ. Proc., § 1094.5, subd. (b)), in that the notice of the meeting was not published "at least ten (10) days prior to such hearing," as required by section 1787, subdivision 4(b) of the ordinance. Appellants contend that the requirement of ten days' notice is jurisdictional. (*Santa Monica L. & M. Co.* v. *Hege*, 119 Cal. 376, 379-380 [51 P. 555], notice of mechanics' lien; *Beck* v. *Wilson*, 49 Cal.App. 281, 282-283 [193 P. 158], notice of sale for delinquent taxes.)

The contention is untenable here. Subdivision 4(a) of section 1787 provides that, with certain exceptions not herein pertinent, no public hearing need be held  Moreover, personal notice of the June 4th meeting was mailed to all interested property owners. Appellants, together with their counsel, attended the meeting and participated therein. ■ As stated in *De Luca* v. *Board of Supervisors*, 134 Cal.App.2d 606, 609-610 [286 P.2d 395] :

"The general rule is that one who has been notified to attend a certain proceeding and does do so, cannot be heard to complain of alleged insufficiency of the notice; it has in such instance served its purpose. ■ This rule applies to one . . . who appears in an administrative proceeding without the notice to which he is entitled by law. . . . The rule also applies to a hearing upon a zoning application. [Citing cases.]"

The special meeting of June 4th was called to order at 8:15 p. m. Arguments in favor of and opposed to the granting of the application were heard. Appellants' attorney spoke at length, explaining the reasons for their objections. At 9:45 p. m., at the request of the chairman of the zoning and permits committee, a 15 minute recess was taken to permit the committee to discuss the proceedings. The meeting reconvened at 10 p. m., at which time the chairman of the zoning and permits committee gave the following oral report:

"The Zoning and Permits Committee met on May 28, 1956, and considered the revised plot plan as submitted by The Pacific Telephone and Telegraph Company. The Committee feels that recommendations as outlined in Report to the Planning Commission dated March 6, 1956, have been complied with by The Pacific Telephone and Telegraph Company. The Committee feels the Planning Commission has the right to grant the extension of this building by the issuance of a Use Permit. The Committee feels, also, that the Commission has given due consideration to arguments, pro and con. In the opinion of the Committee, the granting of the Use Permit would conform to Section 1787, Sub. 5, of the Zoning Ordinance, therefore, the Zoning and Permits Committee recommends to the Commission that Use Permit No. 165 be granted subject to the following conditions:

(1) The building be erected in strict conformance with the revised plot plan as submitted May 24, 1956.

(2) That the Architectural Committee review and approve

in advance the telephone landscaping plan, especially with reference to the buffer area north of the building.

(3) That the parking lot lighting plan be approved in advance by the Architectural Committee.

(4) That such other conditions as were outlined in the Report dated March 6, 1956, which apply to the granting of this permit be complied with."

The commission thereupon accepted the report and passed a motion to grant the use permit.

Appellants complain because the vote to grant the permit was taken at that time, asserting that they "and other protestants were summarily cut off from completing their case before the Planning Commission by a strategy employed by the Commissioners, putting the assemblage off guard." However, appellants did not request to be heard further and they do not set forth what evidence they may have wished to present. The appellants were afforded ample opportunity to, and they did vigorously and repeatedly, voice their objections to the granting of the use permit. Their counsel was not refused the floor. To the contrary, he spoke at length at the June 4th meeting. No one was refused the privilege of speaking at any one of the six public hearings at which respondent's application was considered. It is apparent from the record that appellants had a full and fair hearing and that the commission did not act summarily.

The main question before the superior court and now before us is whether there was evidence of sufficient substantiality to support the commission's finding that the granting of the use permit would not be detrimental to the persons residing or working in the neighborhood or to their property. (*Wood* v. *City Planning Com.*, 130 Cal.App.2d 356, 364 [279 P.2d 95].) Appellants argue that there was no evidence from anyone in the neighborhood or familiar therewith that the addition would not be detrimental thereto and that the commission disregarded the evidence as to the effect on the neighborhood and were governed solely by what they deemed best for the city as a whole. We believe that the argument of appellants is largely an argument as to the weight of the evidence and the wisdom of the commission's granting the permit. (*Schumm* v. *Board of Supervisors*, 140 Cal.App.2d 874, 879 [295 P.2d 934].) It is true that the members of the commission believed the expansion of respondent's telephone facilities would benefit the city and one member testified that he considered "the general welfare of the city" to be "the

prime thing." However, the secretary of the commission testified that they considered the amount of parking that would be necessary, the type and location of the loading facilities, the design of the proposed building, what inconvenience the new addition might cause persons residing in the area, and whether the proposed use would be detrimental to the health, safety, and peace of those in the neighborhood or injurious to their property. Other members of the commission testified in similar vein. Six adjoining property owners recommended a granting of the permit subject to the conditions upon which it was issued. The report of the zoning and permit committee, which was accepted by the commission, recites that "the granting of the Use Permit would conform to section 1787, sub. 5, of the Zoning Ordinance," which provides:

"(a) In the granting of any use permit, the findings of the Planning Commission shall be that the establishment, maintenance or operation of the use or building applied for will not, under the circumstances of the particular case, be detrimental to the health, safety, peace, morals, comfort and general welfare of persons residing or working in the neighborhood of such proposed use, or be detrimental or injurious to property and improvements in the neighborhood or to the general welfare of the City."

The record supports the trial court's finding that the commission found that the addition would not be detrimental to residents or workers in the neighborhood nor to their property. From the foregoing it appears that there was ample evidence to support the findings and that the commission did not consider only the general welfare of the city. ■ Appellants were not entitled to a trial de novo nor to prove, as they sought to do, that respondent's present building had not been finally approved as required by the use permit issued therefor nor that it did not architecturally conform to the plans submitted. Appellants rely upon *Dare* v. *Board of Medical Examiners*, 21 Cal.2d 790, 799-801 [136 P.2d 304], wherein petitioner sought a writ of mandate to compel the State Board of Medical Examiners to restore his license which had been revoked. Therein the court stated there was a right to a limited trial de novo, declaring:

". . . If it should appear from that record that incompetent evidence had been received by the board, the complaining party should not be foreclosed from objecting on the trial to its admissibility. Also if the board had improperly refused

to entertain admissible evidence the litigant should not be foreclosed from offering it at the trial. If additional evidence not included in either category be sought to be introduced by a party, the court has the right to receive it upon a showing that, in the exercise of reasonable diligence, it could not have been introduced before the board. If the credibility of witnesses before the board be brought in question in the mandamus proceeding the opportunity should be afforded for further examination or to contradict or impeach their testimony. . . .

. . . . . . . . . . . . .

". . . If in such a proceeding it appears that there was no breach of duty in the matter of receiving or refusing to receive evidence; that there is not other pertinent evidence which the trial court, in the exercise of a wise discretion, should receive, or that such other evidence should be and has been received, then the court has the power to make its findings of fact and conclusions of law and render judgment either denying the relief sought or by an appropriate writ directing the board to perform its official duty in the premises."

As was said in *Damiani* v. *Albert*, 48 Cal.2d 15, 17 [306 P.2d 780]: "On an application for a writ of mandate to review an order of a local quasi-judicial body such as the commission in the present case, the trial court does not have the right to judge the intrinsic value of the evidence or to weigh it. The power of the court is confined to whether there was substantial evidence before the commission to support its findings."

█ We find no merit in appellants' argument that the commission exceeded its jurisdiction in approving the proposed parking area, which parking area it required as a condition of granting the use permit. Section 1785, subdivision 4(d), provides: "Off-street parking areas in conjunction with commercial uses may be permitted in 'R' District on properties adjoining 'C' or 'M' Districts upon first securing a use permit in each case." Appellants contend that these provisions forbade the approval of the respondent's proposed parking area because the property of respondent does not adjoin a C or M zone, but on the contrary is entirely surrounded by R zone property. We think the quoted section of the ordinance upon which appellants rely has to do with the granting of parking uses, to be used in conjunction with established commercial uses, and did not prevent the commission

requiring and then approving the installation of a parking area as a condition to granting the new use permit zone by the respondent. It also appears that section 1784.2, subdivision 6(b), provides: "All other uses permitted and nót enumerated in this section shall furnish parking as required by the Planning Commission." This is a special section pertaining to requirements as to parking in R 3 zones. Subdivision 6 is headed "Parking Required." Subsection (a) provides what parking shall be required for each dwelling unit, etc. Subsection (b) (above quoted) authorizes the planning commission in permitting uses other than residential use to establish its own requirements for the furnishing of parking. We think that the special provisions of section 1784.2, subdivision 6(b), prevail in this case.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.