[L. A. No. 25589. In Bank. Jan. 22, 1960.]

ELIZABETH C. DeWITT et al., Respondents, v. BOARD OF SUPERVISORS OF THE COUNTY OF SAN DIEGO, Appellant.

James Don Keller, District Attorney, Henry A. Dietz, County Counsel, and Bertram McLees, Jr., Deputy, for Appellant.

Raymond F. Feist for Respondents.

PETERS, J.—This is an appeal from a judgment granting a peremptory writ of prohibition directing the Board of Supervisors of San Diego County, hereafter referred to as the Board, to desist from further proceedings to effectuate a proposed boundary change of the Carlsbad Union School District and the Oceanside-Libby Union School District, except to implement an order made by the Board directing that an election be held in such districts. The petitioners for the writ, who are the respondents on this appeal, are several voters in the area to be transferred from one district to the other. They will be referred to herein as DeWitt et al.

The material facts are not in dispute. Pursuant to the then provisions of article 5, chapter 7, division 2 of the Education Code (now art. 6, chap. 2, div. 5) a petition was presented to the Superintendent of Schools of San Diego County requesting a change of boundaries between the Carlsbad Union School District and the Oceanside-Libby Union School District. The superintendent examined the petition, found that it was sufficient, signed it and sent a copy to the governing boards of the Carlsbad and Oceanside-Libby districts. The copies were received on November 15, 1957. The original of the petition was filed with the Board, along with the superintendent's favorable recommendation including a statement that it was his belief ''that some division of opinion exists among the voters in the area,'' and that ''opposition, if any, . . . [is] limited at this time.''

On November 19, 1957, the Board in regular meeting, directed that the determination of the change of boundaries should be decided by an election of the voters of the affected territory as provided in then Education Code, section 2504 (now sec. 1793). On the following day, the Board, in an adjourned session of the previous day's regular meeting, rescinded its order of November 19th and directed that the petition be heard before the Board. No steps were taken by the county superintendent of schools as provided by then section 2506 (now section 1795) regarding the order of November 19th. Instead, he set the matter for hearing before the Board on January 14, 1958, pursuant to the November 20th order.

After the hearing on January 14th, but before the Board had an opportunity to render its decision, DeWitt et al. filed the petition for prohibition which is the subject of the present appeal.

The basic question presented is whether the Board, at the adjourned meeting of November 20th, had the power to rescind its order of November 19th, and to direct that the boundary issue be decided by it instead of by the election ordered on November 19th. The trial court, relying on the general rule that, where a body of limited jurisdiction acts in a quasi judicial capacity pursuant to authority granted to it by statute, it has no authority to reconsider its action or to rescind quasi judicial determinations once made, granted the writ. (*Olive Proration etc. Com.* v. *Agricultural etc. Com.*, 17 Cal.2d 204, 209 [109 P.2d 918]; *Heap* v. *City of Los Angeles*, 6 Cal.2d 405, 407 [57 P.2d 1323]; *Vernon* v. *Board of Supervisors*, 142 Cal. 513, 516 [76 P. 253]; *Williams* v. *Bergin*, 108 Cal. 166, 170 [41 P. 287]; *Firestone Tire & Rubber Co.* v. *Board of Supervisors*, 166 Cal.App.2d 519, 531 [333 P.2d 378].) The Board admits the existence and validity of this rule, but contends that it is inapplicable here because its action under section 1793 of the Education Code was not quasi judicial but administrative in nature.

Section 1793 of the Education Code was added to that code in 1955. It provides that: "The board of supervisors may determine that it will hold a hearing of the petition [for a change of boundaries] or it may order that an election be held." Thus, on its face this section grants the board of supervisors unlimited discretion to select either alternative. In determining which alternative to adopt, there is no provision for public notice, hearing or the taking of evidence. These are normally associated with proceedings of a judicial or quasi judicial nature. (See *Imperial Water Co.* v. *Board of Supervisors*, 162 Cal. 14, 18 [120 P. 780]; *Hammond Lbr. Co.* v. *Board of Supervisors*, 85 Cal.App.2d 568, 570-571 [193 P.2d 503].) It should be pointed out that the ultimate determination that the Board must make under section 1793 does not affect the property or rights of those interested. Whichever alternative is adopted, those interested are given the right to express their views as to the propriety of the proposed boundary change. There is therefore no merit in the contention that the power exercised pursuant to section 1793 is quasi judicial in nature.

DeWitt et al. point out that the 1955 amendments not only added section 1793 to the Education Code, but also

amended section 1792, by adding the provision that the superintendent's recommendation contain "a statement of his belief as to whether the electors residing in the districts which would be affected are substantially divided in opinion with respect to the desirability of such change." Prior to the 1955 amendments, it had been provided in section 1792 only that the superintendent file the petition with the Board, together with his recommendation as to its disposition, and that the petition be set for hearing before the Board. There was no provision for the alternative procedure of an election before 1955. It is contended, and the trial court held, that the 1955 amendments, properly interpreted, require that an election be held whenever the Superintendent certifies that the electors in the affected areas are substantially divided in opinion.

Such an interpretation renders section 1793 meaningless. It is clearly incorrect. Section 1793 confers on the Board the power to select the procedure to be followed, that is, whether the Board itself shall determine the issue, or whether an election shall be held. The contended for construction would mean that the mere "belief" of the superintendent that there existed a substantial division of opinion would deprive the Board of its discretion by requiring an election. Thus, under the contended for construction, the final power to select the procedure to be followed would rest in the superintendent and not in the Board, where it is placed by section 1793. The legislation does not so provide.

The only reasonable interpretation of the amendments to the two sections is that the Legislature wanted to give the Board a power it did not theretofore possess, namely the power to order an election, and that it wanted the Board to have before it when it determined whether to decide the issue itself or to hold an election, the "belief" of the Superintendent as to whether or not a substantial difference of opinion existed in the affected areas. That is what the sections, as amended, provide.

Under the sections before their amendment the superintendent was required to give his "recommendation" as to how the petition should be disposed of, to the Board. In *Crane* v. *Board of Supervisors*, 17 Cal.App.2d 360 [62 P.2d 189], it was held that such "recommendation" was directory only, and not binding on the Board. At page 370 it is stated: "What the county superintendent of schools may have thought about the proper disposition of the petition, or what was or might have been his 'recommendation' with reference thereto, was wholly immaterial and of no consequence when it came to the decision

to be rendered by the board. In other words, what the judgment of the county superintendent of schools with respect to either the granting, or the denial, of the petition might have been, certainly was neither of binding force, nor in anywise controlling in the premises. On hearing the facts, the board was under no compulsion to agree with his 'recommendation.' '' Certainly, there was no reason to assume that the Legislature intended to give greater effect to the Superintendent's "belief" than that given to his "recommendation."

Thus, it is quite apparent, that while the supervisors must necessarily exercise their judgment when deciding whether to hold a hearing or to order an election, the determination is not, in the context relevant here, a factual determination to be made after the presentation of evidence. It is this factor which distinguishes the cases cited above in support of the general rule. In all of those cases, the body held to be precluded from rescinding a prior determination had had to make a factual determination in the first instance, and as an aid thereto, hearings had been held and evidence taken.

The applicable principle as to actions such as are here involved is stated in 4 McQuillin, Municipal Corporations (3d ed. 1949), pp. 544-545 as follows: ''. . . the legislative body of the corporation, or any board or department thereof, possesses the unquestioned power to rescind prior acts and votes at any time thereafter until the act or vote is complete, provided vested rights are not violated, and such rescission is in conformity to the law applicable and the rules and regulations adopted for the government of the body.'' (See also *Guy F. Atkinson Co.* v. *Offner*, 86 Cal.App.2d 92 [194 P.2d 33]; *Vernon* v. *Board of Supervisors*, 142 Cal. 513, 516 [76 P. 253].)

No vested rights intervened between the November 19th order and the November 20th order. As noted above, the Superintendent of Schools had taken no steps to implement the November 19th order. Thus the Board's action on November 20th, rescinding its order of the prior day and ordering that a hearing be held, was proper.

There is another question involved that was not passed upon by the trial court, and that is whether the hearing before the Board on January 14, 1958, was validly held at that time. Section 1794 of the Education Code provides that, ''In the event the board of supervisors determines that a hearing of the petition shall be had, the county superintendent of schools shall set the petition for hearing by the board of supervisors at a regular meeting of the board, but the hearing

shall be *more than 60 days after receipt of a copy of the petition* by the governing board of each district which would be affected by the proposed change of boundaries." (Emphasis added.) The governing boards of the Carlsbad and Oceanside-Libby Union School Districts received copies of the petition on November 15, 1957. The hearing was set for exactly 60 days and not "more than 60 days" after copies of the petition had been received. DeWitt et al. contend that this invalidated the hearing. The Board, on the other hand, contends that the "more than 60 days" requirement of section 1794 is directory, not mandatory, and that since all parties appeared or were represented at the hearing, the variance from the statutory period did not invalidate the proceedings.

It has been held that one cannot complain of insufficient notice where, in fact, he has been notified of a meeting or hearing and attends and participates. (*McLain* v. *Planning Commission*, 156 Cal.App.2d 161, 165 [319 P.2d 24]; *DeLuca* v. *Board of Supervisors*, 134 Cal.App.2d 606, 609 [286 P.2d 395], and cases cited.) DeWitt et al. contend that these cases are inapplicable because in these cases there was no objection made to holding the hearings, whereas in the instant case counsel for DeWitt et al. appeared at the hearing and specifically objected to its being held at that time. While it is true that an objection was made, and thus the error was called to the attention of the Board, it does not appear that DeWitt et al. were at all prejudiced by the lack of compliance with the statute. The minutes of the hearing reveal that counsel for DeWitt et al. raised a number of objections to the proposed boundary change and presented several petitions to the Board. In addition, DeWitt et al. have not alleged that due to the holding of the hearing one day early, any of the objectors were precluded from adequately preparing their case, or adequately and fully presenting their evidence. Since DeWitt et al. were present and took part in the hearing, and since no prejudice has been shown, the failure to comply with section 1794 does not invalidate the hearing.

DeWitt et al. contend that the "more than 60 days" provision of section 1794 and the provision of section 1811 of the Education Code relating to the affidavit of posting of notice are mandatory and jurisdictional. Whether a statutory provision is mandatory or directory depends upon ascertaining the legislative intent. The Board has suggested that the "more than 60 days" provision "was probably an attempt by the Legislature to make certain that boards of trustees of small

school districts having infrequent meetings would be certain of receiving notice of the change of boundaries proposal before the hearing was held.'' This interpretation appears to be reasonable and is supported by the fact that section 1811 provides for giving notice to the trustees of the districts involved and posting copies of the notice in various public places in each of the affected districts, such sending of notice and posting of copies of notice to be at least 10 days prior to the date of hearing. In view of the 10-day notice period, it does not appear that the Legislature considered the ''more than 60 days'' requirement to be ''of the essence'' in accomplishing the purposes of the statute. (See *Crane* v. *Board of Supervisors,* 17 Cal.App.2d 360, *supra;* 45 Cal.Jur.2d § 158.) Moreover, under the circumstances here, where those contesting the sufficiency of the notice have not suffered because of the alleged deficiencies, it must be held that the provisions are merely procedural, and not jurisdictional. It should also be noted that since the purpose of the ''more than 60 days'' provision was to give ample time to the governing boards of the affected districts to consider the proposed boundary changes, DeWitt et al., for whose benefit the provision was not intended, are not in a position to challenge the lack of compliance.

The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., McComb, J., and White J., concurred.