### INHABITANTS OF the TOWN OF NORTH BERWICK

v.

### STATE BOARD OF EDUCATION et al.

Supreme Judicial Court of Maine.

March 10, 1967.

(1) "[T]hat the Board make a finding of fact that the Town of Berwick voted 150–10, the Town of Lebanon voted 270–249, and that the Town of North Berwick voted 160–122 to form a school administrative district and that each of the towns have properly elected directors and that all proceedings are in conformity with the law," * * *.

(2) "[T]hat the towns of Berwick, Lebanon and North Berwick be issued a Certificate of Organization naming them District #60."

(3) "[T]hat Order #4 and Form 7 be issued calling for an organizational meeting of District #60 to be held at Berwick High School on Monday, September 19, 1966 at 7:30 p. m."

Simon Spill, Biddeford, Harry S. Littlefield, Wells, for plaintiff.

George C. West, Deputy Atty. Gen., John W. Benoit, Asst. Atty. Gen., Augusta, for State Bd. of Education.

Ward T. Hanscom, Sanford, for Town of Berwick.

James H. Titcomb, Sanford, for Town of Lebanon.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

DUFRESNE, Justice.

On report, upon the complaint, the writ issued and the agreed statement of facts and pertinent portion of the record with exhibits attached, for this Court to render such decision as the rights of the parties require.

The ultimate issue before us is whether we should quash the records of the State Board of Education wherein at a meeting held on August 29, 1966, it was voted as follows:

The issue was raised in the Superior Court by complaint for a review of the Board's proceedings and an order in certiorari to quash the same under Rule 80(b) of our Maine Rules of Civil Procedure. The case was reported to us under 72 M.R.C.P.

The factual background may be narrated as follows: The superintending school committees of the municipalities of Berwick, Lebanon and North Berwick respectively duly filed under 20 M.R.S.A. § 215 an application with the State Board of Education for its approval of the formation of a school administrative district consisting of the 3 reference towns. Upon joint meeting of the municipal officers and the members of the superintending school committees of the 3 towns legally called and attended, it was voted that the fair and equitable number of school directors to be elected by and to represent each of the towns of Berwick, Lebanon and North Berwick respectively was 3. Thereafter the State Board of Education (the Board), on May 27, 1966, ordered (Order #3, so-called) the municipal officers of each of the 3 municipalities to call separate town meetings for the purpose of voting upon "the question of the formation

of the proposed School Administrative District and other questions relating thereto" and specifically on each article in the following form:

"Article 2: To see if the municipality will vote to join with the municipalities of BERWICK—LEBANON—NORTH BERWICK to form a school administrative district.

Article 3: To see if the municipality will vote to approve the allocation of representation among the municipalities on the board of school directors as recommended by the superintending school committees and municipal officers as follows: The total number of directors shall be ___9___ and

the Town of Berwick _____ shall be entitled to ___3___ directors,
the Town of Lebanon _____ shall be entitled to ___3___ directors, and
the Town of North Berwick _____ shall be entitled to ___3___ directors.

Article 4: To see if the municipality will vote to authorize the district to assume full responsibility for amortizing the following listed school indebtedness now outstanding in the municipalities and school districts comprising the school administrative district under consideration:

| Obligated Municipality | Type of Obligation | Amount Unpaid | Interest Rate | Payment schedule on all outstanding school indebtedness |
|---|---|---|---|---|
| Berwick | Bonds | $95,000 | 4% | Oct. 1 annually as follows: $5,000 1966 $6,000 1967–70 $7,000 1971–73 $8,000 1974–76 $9,000 1977–78 $3,000 1979 |
| Lebanon | MSBA | $55,680 | 2.5% | $4,640 annually Dec. 1 |
| " | Bonds | $55,800 | 2.9% | $3,100 annually Sept. |
| North Berwick | Note | $ 2,000 | 3% | $2,000 annually |
| " " | Note | $25,000 | 3.75% | $5,000 annually |

Article 5: To choose ___3___ school directors to represent the Town on the Board of School Directors of the School Administrative District."

———◆———

In duly called elections, each town on June 18, 1966 voted in the affirmative on each article submitted under the Board's Order #3 except the town of Lebanon where the question of the formation of the district was defeated by the narrow margin of 3 votes (137 yes—140 no) and the towns of Berwick and Lebanon elected their 3 school directors, but North Berwick did not. The clerks of the respective towns made true returns of the results of the June 18 election to the Board under 20 M.R.S.A. § 216, for Berwick and Lebanon on June 28, 1966 and for North Berwick on August 24, 1966. North Berwick's returns however included the results of the June 18 election, and also those of a second election held on August 20, 1966 on the very same articles as were submitted to the inhabitant-voters on June 18, 1966. Lebanon had also held a second election on the same articles on July 16, 1966, and its town clerk had filed the returns of that election with the Board on July 20, 1966. Lebanon, in this second election, voted in the affirmative on all articles and elected its 3 school directors,

the affirmative vote on the question of the formation of the school administrative district reversing by the score of 270 yes votes to 249 no votes the previous negative decision of the electorate. On July 22, 1966, at its regular monthly meeting, the Board had tabled the matter of the organization of the school administrative district of the 3 towns, undoubtedly because it then had not received the official returns of North Berwick. The North Berwick second election produced a resounding defeat for all articles submitted (Article 2: 89 yes to 288 no votes —Article 3: 105 yes to 190 no votes—Article 4: 122 yes to 231 no votes), but the voters inconsistently elected 3 school directors.

No issue is raised concerning the formality of notices and the posting of warrants for any of the special town meetings at which any of the elections were held, and it is admitted that the second town meetings held in Lebanon and North Berwick were called and held without any further application on the part of any of the 3 towns to the Board, and that the notice and warrant for the same did not expressly state that the election was for the purpose of reconsideration of the town's previous vote. The State Board of Education, on August 29, 1966 upon legal advice to that effect, chose to accept Lebanon's returns of its second election of July 16, 1966, but voted to accept North Berwick's returns of its first election of June 18, 1966 so far as articles 2, 3 and 4 were concerned, and that part of North Berwick's returns of its second election of August 20, 1966 respecting article 5 thereof wherein North Berwick elected school directors for the first time. The Board disregarded the overwhelming defeat of the question of the formation of the school administrative district and the other questions incidental thereto. North Berwick challenges the legality of the Board's action through these proceedings in certiorari.

The defendants preliminarily suggest that review of the Board's actions may not be had in certiorari proceedings.

■ The usual function of the writ of certiorari is to enable a party without remedy by appeal, exception or otherwise, to obtain the certification of the true record properly extended of an inferior tribunal, in proceedings judicial or quasi-judicial in nature, so that the superior tribunal ordering the certification may review the decision of the inferior tribunal on said record, and after inspection of the record determine whether material mistakes of law were made for which the record should be quashed, such as whether the inferior tribunal had jurisdiction of the parties and the subject-matter or whether it exceeded its jurisdiction, or otherwise proceeded in violation of law. Carter v. Wilkins, et al., 160 Me. 290, 203 A.2d 682 (1964); Toulouse et al. v. Board of Zoning Adjustment, City of Waterville, 147 Me. 387, 87 A.2d 670 (1952); Jellerson v. Board of Police of the City of Biddeford, 134 Me. 443, 187 A. 713 (1936).

■ Our Legislature did not provide for an appeal as such from decisions or rulings of the State Board of Education in proceedings for the formation of school administrative districts, and under such circumstances the only permissible review, if any, of the actions of the Board would be by the extraordinary writ of certiorari known to the common law, provided by statute, 14 M.R.S.A. §§ 5351 et seq., and implemented by 80(b) of our Rules of Civil Procedure. See Carter, supra; Chavarie v. Robie, 135 Me. 244, 194 A. 404 (1937).

■ This power of the Superior Court by writ of certiorari to quash or affirm, or enter such judgment as the court below should have entered, or make such order, judgment or decree in the premises as law and justice may require, 14 M.R.S.A. § 5352, is available however only in proceedings of bodies and officers acting in a judicial or quasi-judicial capacity. Carter, supra, 160 Me. 290, 203 A.2d at page 293; Rogers v. Brown, 134 Me. 88, 90, 181 A. 667. See also, R. I. Home Builders, Inc. v. Hunt, 74 R.I. 255, 60 A.2d 496 (1948).

We said in McGary et al. v. Barrows et al., 156 Me. 250, at page 260, 163 A.2d 747, that the School District Commission, predecessor of the State Board of Education, was an administrative agency designed by the Legislature to administer the Sinclair Act, and thus effectuate the legislative purpose of promoting, developing and adjusting within the framework of designated criteria a state plan for the creation of efficient school administrative districts throughout the State. See 20 M.R.S.A. §§ 211, 212. To the Board was given the duty of approving applications for the organization of School Administrative Districts; to be responsible for a thorough study of school conditions and needs in the State; to determine plans for the establishment of appropriate School Administrative Districts in all organized territory of the State; to evaluate the impact of consolidation on valuation per pupil in the larger district as compared to the individual towns comprising the district and make definite recommendations with respect to an eventual uniform minimum tax rate toward the support of a foundation program of education; to survey as completely as possible, school building needs and costs in the respective proposed districts which are required to effectively accomplish the organization of the districts; to order meetings of the municipal authorities and superintending school committees to determine town representation on proposed school administrative districts; to order the submission of the question of the formation of school administrative districts and the election of school directors to the legal voters of the municipalities involved and canvass the results thereof; to finalize its findings in the issuance of a certificate of organization and a direction setting forth the date when the elected directors of the district shall formally organize. From this mass of duties and powers placed upon the Board by the Legislature, it must be conceded that the Board is expected to use discretion and judgment in the development of a general state plan for the creation of efficient School Administrative Districts throughout the State, but in particular when approving specific district organizations. But every act involving judgment or discretion is not necessarily a judicial act even though notice and hearing be required before such act may be performed. R. I. Home Builders, Inc. v. Hunt, 74 R.I. 255, 60 A.2d 496, 498 (1948).

The mere creation of a school district is a legislative act as the Legislature may directly set up such corporations by statute without referendum to the people in the municipalities within the proposed district; it may however delegate such power to some administrative body. McGary et al. v. Barrows et al., supra, 156 Me. 250, at page 262, 163 A.2d 747. It is within the power of the Legislature to divide or join towns into school districts as it pleases. Parker v. Titcomb, 82 Me. 180, 183, 19 A. 162 (1889). It does not necessarily follow, however, that where the Legislature delegates such power to a local administrative body and provides that it can be exercised only upon certain conditions and upon the ascertainment of certain facts by such body, that the proceedings thus authorized are not of a judicial character.

The authorities however are divided respecting the establishment, division or consolidation of school districts or similar quasi corporations, as to whether such is an exercise by the administrative agency of a quasi-judicial act or merely a legislative or administrative function.

Viewing the function as quasi-judicial and the proper subject of certiorari review are the following authorities. McKeown v. Moore, 303 Ill. 448, 135 N.E. 747, (1922) (changing of boundaries of high school districts); Crane et al. v. Board of Supervisors of Los Angeles County, 17 Cal.App. 2d 360, 62 P.2d 189 (1936); Clairborne v. Joint Consol. School Dist. No. 7, Greer and Jackson Counties, 195 Okl. 215, 156 P.2d 602 (1945) (annexation); Nicklaus v. Goodspeed, 56 Or. 184, 108 P. 135 (change in boundaries); State ex rel. Bodtke v. School Board of Joint Common School

Dist., 1 Wis.2d 208, 83 N.W.2d 724 (1957) (annexation); State ex rel. Grant v. School Board, 4 Wis.2d 499, 91 N.W.2d 219 (1958) (annexation); Hohl v. Board of Education of Poweshiek County, 250 Iowa 502, 94 N.W.2d 787 (1959) (reorganization); Imperial Water Co. No. 1 v. Board of Sup'rs of Imperial County, 162 Cal. 14, 120 P. 780 (1912) (establishment of irrigation district); State ex rel. Jacobson v. Board of Com'rs of Teton County, 47 Mont. 531, 134 P. 291 (1913) (creation of a new county). To the contrary, see Austin v. Eddy, 41 S.D. 640, 172 N.W. 517 (1919); Appeal of Common School Dists. Nos. 27, 20, 5 and 3, Faribault County, 232 Minn. 342, 45 N.W.2d 657 (1951); Mabray v. School Board of Carroll County, 162 Miss. 632, 137 So. 105 (1931); Esbenshade v. Department of Public Instruction, 181 Pa.Super. 232, 124 A.2d 478, affirmed by the Supreme Court, 387 Pa. 281, 127 A.2d 678 (1956).

We need not decide in the instant case whether as a general rule the proceedings of the State Board of Education in the formation and approval of school administrative districts under the Sinclair Act are of a judicial character and subject to judicial review in certiorari. We must determine however whether the Board was exercising an administrative or judicial function when it ruled as a matter of law that Lebanon's second election was the legal election which it had the right and duty to canvass under the school administrative district law, while the law compelled it to legally recognize North Berwick's first election and to disregard its second election in part giving it legal effect only so far as it elected the 3 necessary directors to complete the board of school directors of the proposed school administrative district. We say that the Board rendered a judicial judgment when it resolved these legal issues standing in the way of its proper exercise of its administrative powers.

Indeed, as espoused in Carter v. Wilkins, et al., 160 Me. 290, 294, 203 A.2d 682 (1964), the recognized test for the determination of the quasi-judicial or nonjudicial character of an act of an administrative board as a basis for reviewability by certiorari depends on the nature of the act itself performed rather than on the character of the officer or body performing it. See also, R. I. Home Builders, Inc. v. Hunt, 74 R.I. 255, 60 A.2d 496, 498 (1948).

We do recognize as stated in McGary et al. v. Barrows et al., 156 Me. 250, at pages 261–262, 163 A.2d 747, at page 751 supra, that the State Board of Education, therein the School District Commission, in ascertaining whether or not "a majority of the residents within each of the municipalities involved, voting on each of the articles or questions submitted to them, have voted in the affirmative, and have elected the necessary school directors to represent each municipality" (20 M.R. S.A. § 216), may have been performing duties usually associated with a canvassing board and that the declaration or findings respecting the result of the respective elections upon inspection of the returns was an administrative and not a judicial act in nature. Campbell, Petr. v. Watts, 71 Me. 380. But our problem in the instant case deals not with the canvass of elections. Rather, it arises before the Board enters upon its canvassing function. The Board had to decide which of two elections in the case of each of the towns of Lebanon and North Berwick was the legal election for the Board to canvass. The Board, recognizing that this determination was of a judicial character, sought the advisory opinion of the Attorney General and of the attorney for the Maine Municipal Association and proceeded accordingly. Should this judicial determination by an alleged administrative body be binding upon the affected voters whose decision at the polls admittedly will be thwarted if corrective procedures are not available to

have the Board canvass the right election? We think not.

None will dispute the fact that all the following legal questions are matters for a court to decide, matters wherein courts historically have been accustomed to perform, and wherein under 14 M.R.S.A. §§ 5951 et seq., our Superior Court could have provided advisory relief by way of declaratory judgment prior to the Board's canvassing of any election, to wit: (1) whether the second vote by the town of Lebanon held on July 16, 1966 was the election to be canvassed by the Board, instead of that of June 18, 1966, i. e. whether the second election had such legal efficacy as to substitute its affirmative vote on the question of formation of the school administrative district for the negative vote of the previous election; (2) also whether the second vote by the town of North Berwick held on August 20, 1966 was the election to be canvassed by the Board instead of that of June 18, 1966; (3) whether the Board could canvass both elections and accept the results of either election or the results of each as to different questions submitted in referendum at the discretion of the Board. We conclude that the Board in the instant case exercised judicial powers in the course of performance of its delegated function, which are subject to review by certiorari.

The availability of certiorari as a remedy to correct the Board's action alleged to have been beyond its jurisdiction or taken in an illegal manner is not the sole threshold hurdle raised against the plaintiff's attempt at quashing the Board's records, but the defendants further set up as a legal bar to any relief the statutory provision which declares that "the issuance of such certificate by the board shall be conclusive evidence of the lawful organization of the School Administrative District", in the instant case of SAD No. 60, 20 M.R.S.A. § 216.

It is true that, since the Legislature has the power to create school administrative districts without notice to or consent of the people within the proposed district, it may at its pleasure, with or without conditions, subject the formation of such districts to home rule. It has the right, however, even if it does permit the establishment of school districts upon popular approval of the inhabitants of the proposed district, to deny any appeal from the action of the Board in its issuance of a certificate of organization to a district and to prevent any legal attack upon the validity of the organization of the district once the certificate has been issued. Imperial Water Co. No. 1 v. Board of Supervisors of Imperial County, 162 Cal. 14, 120 P. 780, 783 (1912). And in McGary et al. v. Barrows et al., 156 Me. 250, at pages 263, and 264, 163 A.2d 747, at page 755, we said:

"We have seen that the Legislature could have created this or any other School Administrative District by special act. Here the Legislature gives to the School District Commission (and later to the State Board of Education) the authority to speak finally for the State without right of appeal on the question of the organization of each School Administrative District. It is the issuance of the certificate that completes the organization of a School Administrative District.

The purpose of such provision is plain. It is to make clear and certain to all who may deal with School Administrative Districts that there are no hidden difficulties in the organization and that all may consider that the necessary statutory steps have been duly and properly taken.

But it is said the opportunity for fraud or mistake is great. We are comforted by the thought that we may presume all officers of government will act faithfully and that under the Sinclair Act fairly administered there is no reason to believe that facts which should prevent the issuance of a certificate of organization will not come to light before final

action. That there is risk in this procedure may be admitted. On balance, between the possible harm and the understandable benefits of certainty in establishing the legal organization of a School Administrative District at the outset the Legislature chose the benefits of certainty."

In this case, the Board of Education did not act with fraudulent and corrupt motives, but in canvassing the wrong election and thus refusing to give effect to the negative vote of North Berwick's residents upon an erroneous legal opinion that the second election was invalid, it brought about a result no less harmful.

In Blackstone, et al. v. Rollins, et al., 157 Me. 85, 170 A.2d 405 (1961), and Peavy et al. v. Nickerson et al., 158 Me 400, 185 A.2d 309 (1962), we re-affirmed our decision in McGary, and prevented a collateral attack upon the organization of the school administrative district there involved both upon the conclusiveness of the certificate of organization and upon the fact that the Legislature had passed legislation specially validating the district.

In none of those cases did the Board canvass the wrong election as it did in the instant case.

 We take notice that the statute did not expressly bar in so many words a direct action attacking the validity of the organization of the district. In Jackvony v. Berard, 66 R.I. 290, 18 A.2d 889, the court was faced with an analogous situation. The Housing Authority Act expressly provided that the certificate of appointment of any commissioner, as filed by the mayor, is conclusive evidence of such commissioner's due and proper appointment. The court ruled that such provision of the statute did not apply in the case, because it was not established that there was a vacancy in the office of commissioner permitting the mayor to make an appointment in the first place. In the instant case, the Board by canvassing the wrong election, illegally issued a certificate of organization in the same manner as the mayor in the above mentioned case illegally issued his certificate of appointment. The statute did not come into play until the Board canvassed the proper of the two elections. The certificate was issued upon the canvass of the wrong election and thus in a manner and on an occasion not prescribed by law, without any legal basis whatsoever.

We cannot ascribe to the Legislature an intent to foreclose a direct attack by certiorari by an aggrieved town at the very birth of the school district or within a reasonable time from the issuance of the certificate of organization and before any rights of third persons had accrued, where as in the instant case the Board, even though without corrupt motive and upon legal advice, proceeded to issue the certificate of organization upon the results of the wrong election, thereby overriding the known and undisputed decision of the electorate. If the Legislature by the provision making the certificate of organization of school administrative districts conclusive evidence of the legality thereof meant more than to proscribe collateral attacks thereon to protect all who may deal with School Administrative Districts and make clear and certain to them that there are no hidden difficulties in the organization, and intended also to ban any possible attack thereon, direct as well as collateral, whether the certificate be issued because of corrupt conduct or as an illegal exercise of power, it could have said so by using more meaningful terminology.

 We hold that McGary, Blackstone and Peavy, supra, do not apply in the instant case. The plaintiff town was not guilty of any laches where it brought these proceedings on October 24, 1966 within 60 days of the issuance of the certificate of organization (August 29, 1966) and within 35 days from the time the district became operative and the directors formally organized (September 19, 1966). The writ being discretionary, Levant v. County Commissioners, 67 Me. 429, (1877), Hopkins v.

Fogler, 60 Me. 266 (1872), we need not pause to indicate under what circumstances even in the case of a fraudulent issuance of the certificate of organization, relief might be denied.

Lebanon's second vote of July 16, 1966 favoring the formation of the district and reversing its previous negative vote of June 18, 1966 was properly accepted by the Board as the legal election the results of which it was duty bound to canvass and recognize. We so hold because at the time of said second election, Lebanon had the right to reconsider its vote of June 18, 1966. As stated in Parker v. Titcomb, 82 Me. 180 at page 182, 19 A. 162 at page 163:

"A town may reconsider its action at the same meeting or at a subsequent meeting if seasonably done. That is, if the action of the town hath not already accomplished its purpose. For, if the vote of a town once accomplishes its purpose, works out the intended result and hath spent its force, it cannot be reconsidered and taken back.

A town is free to act within its legal scope as it pleases. It may take action in one direction to-day, and in another to-morrow, provided it does not impair intervening rights. There is a wide difference, however, between reconsidering action that has once taken effect and worked its result, and, voting action to restore the original state of affairs by original and new proceedings."

In the instant case, no intervening rights had accrued which would have been impaired by the vote of reconsideration. That the notice and warrant did not expressly indicate that this second special meeting or election was for purposes of reconsideration of the previous action taken at a previous meeting or election was immaterial, as the voter who knew of the previous action would consider this new vote as a reconsideration while the voter who may not have known would be voting on the merits of the questions involved and could not claim any grievance by reason of the fact that he was not informed of the reconsideration aspect of the vote. The purpose to be accomplished by the meeting or election of June 18, 1966 was an affirmative vote by a majority of the residents of Lebanon voting in the election in conjunction with an affirmative vote by a majority of such residents in Berwick and North Berwick on each of the articles or questions submitted to them, and the election by each town of the necessary school directors to represent each municipality, 20 M.R.S.A. § 216, to work out as a result of favorable action by all 3 towns the intended school administrative district. Lebanon's negative vote of June 18, 1966 on the question of the formation of the district, together with North Berwick's failure to elect school directors, had effectively arrested for the time being the intended formation of a school administrative district. At the time of Lebanon's second vote on July 16, 1966 the intended school administrative district was still to be born. The Board had not officially canvassed the elections and it had not declared the question of the formation of a school administrative district defeated. The question was still open for reconsideration provided no intervening rights were impaired thereby, without new applications to or orders from the Board.

Upon Lebanon's favorable vote of July 16, 1966 the purpose of the Board's Order #3, so called, the formation of a school administrative district by Berwick, Lebanon and North Berwick, had not then been accomplished as North Berwick had as yet to elect school directors, which action had not been taken on its first vote of June 18, 1966. The respective town meetings and elections had not worked the result which was intended. By amendment, P.L. 1959, c. 353, § 6, the Legislature placed the election of the necessary school directors to represent each municipality, on a par with the required affirmative vote on each of the articles or questions submitted, as a sine qua non to the Board's right to make findings regarding the results of the voting, to make determi-

nations to the effect that the elections had worked or effected a school administrative district under the Sinclair Act, to record the same, to assign a number to the district and to issue to it a certificate of organization.

20 M.R.S.A. § 216: "When the residents of each of the municipalities have voted upon the formation of the proposed School Administrative District and all of the other questions submitted therewith, the clerks of each of the muncipalities shall make a return to the board in such form as the board shall determine. *If the board finds that a majority of the residents within each of the municipalities involved, voting on each of the articles or questions submitted to them, have voted in the affirmative, and have elected the necessary school directors to represent each municipality, and that all other steps in the formation of the proposed School Administrative District are in order and in conformity with law,* the board shall make a finding to that effect and record the same upon its records." (Emphasis mine)

Thus the Legislature intended all preliminary steps in the formation of the proposed School Administrative District including the election of the necessary school directors in each municipality, to have been taken by all the towns involved and to exist simultaneously, before it can be said that the election purpose has been accomplished, the election has become final and the district has been created. Since the actions of the respective towns taken as a whole had fallen short of the intended result because of the failure of North Berwick to elect school directors, North Berwick at its second election held on August 20, 1966 could legally reconsider as Lebanon had at its second election of July 16, 1966 and thus North Berwick's negative vote on the question of the school administrative district cancelled out its previous favorable vote thereon. The Board acted beyond its powers when it did not give legal recognition to North Berwick's recantation; it could not arbitrarily reject the vote upon the question of the formation of the district while accepting the vote on school directors. No intervening rights had accrued.

There was error. The records of the State Board of Education relating to its meeting of August 29, 1966 as quoted at the beginning of this opinion are hereby set aside, annulled, and quashed and the same are declared to be illegal and of no effect. The certificate of organization issued to SAD No. 60 is hereby declared null and void and of no legal significance. SAD No. 60 is hereby declared to be a nullity as a school administrative district, and its charter is hereby declared forfeited.

So ordered.