STATE OF MAINE
YORK, SS.

SUPERIOR COURT
Civil Action
Docket No. CV-16-0086

THORNTON ACADEMY,
KEN & ANGIE LEVESQUE,
PAM & DAN ROCHE,
DIANE C. ROBBINS,
MELISSA WHALL,
NICHOLAS & MICHELLE LEBLANC,
ERICA & LUKE BROCHU,
NOEL & JUDITE HOLMES,
SARA-KATE BEAULIEU,
JESSE & WENDY CARLL,
DARREL & MEREDITH SPEED,
KEVIN & SALENA MACKELL,
CARRIE & JEFF MARTEL,
ROBERT MILLS,
MIKE & TAMMY PELLETIER,
E. PAUL RAYMOND,
KELLY & KYLE SHAW, and
MICHAEL & JAYE WOODS

ORDER

Plaintiffs,

v.

REGIONAL SCHOOL UNIT 21 and
BOARD OF REGIONAL SCHOOL UNIT 21,

Defendants.

In this action Thornton Academy and a group of Arundel residents have filed a three-count complaint challenging a decision by Regional School Unit 21 ("RSU 21") through its elected governing body ("RSU 21 School Board" or "Board") to terminate the option previously enjoyed by Arundel residents to send their middle school children to Thornton Academy Middle School at public expense. Defendants have moved to dismiss two of the three counts plead. For the following reasons, the motion to dismiss Count II is denied. The motion to dismiss Count III is denied in part and

1

granted in part. In addition, the court addresses preliminarily Plaintiffs' motion for a trial on the facts pursuant to Rule 80B(d) and Plaintiffs' motion to specify future course of proceedings pursuant to Rule 80B(i), as set forth below.

## Background

The complaint in this matter alleges as follows.

In approximately 2002 or 2003 Arundel officials became aware that the Town's existing middle school facility would not meet federal requirements under the No Child Left Behind Act. (Am. Compl. ¶ 24.) After school officials had explored a number of alternatives, the question of school selection was put out to referendum and Arundel residents voted to enter into a contract with Thornton Academy in Saco to provide middle school education for Arundel students at Thornton Academy Middle School ("TAMS"). (Id. ¶¶ 26-30.) In 2006, the Town of Arundel and Thornton Academy entered into a ten-year contract ("Contract") pursuant to which Arundel residents were able to send their children to TAMS at public expense. (Id. ¶ 32.)

In 2007, the Maine Legislature enacted a comprehensive reorganization of the public school system. The reorganization mandated, among other things, that school districts consolidate or face potential fines. (Id. ¶ 33.) As part of this process, a Reorganization Planning Committee ("RPC") was formed consisting of representatives of the towns of Arundel, Kennebunk and Kennebunkport, who ultimately submitted a plan to the Maine Department of Education ("Department") to establish Regional School Unit 21. (Id. ¶ 36.)

Plaintiffs allege that preservation of school choice was an ongoing concern for Arundel residents, who, through a representative on the RPC, sought and received an opinion from Department officials that the option to continue sending Arundel middle school students to TAMS would be preserved after the Contract expired. (Id. ¶ 37.)

2

The complaint alleges that other educational administrators and/or their agents at the Department and at RSU 21 have given reassurances that Arundel residents would continue to have the choice of sending their children to TAMS or to the Middle School of the Kennebunks ("MSK"), another middle school within RSU 21, after the Contract expired. (*Id.* ¶¶ 38-43, 49-52, 55, 58, 60, 62-64.)

In 2011 RSU 21's Superintendent announced that RSU 21 intended to buy out the Contract. (*Id.* ¶ 50.) After the matter went to arbitration, the question of terminating the Contract went out to vote again and residents of Arundel and Kennebunk voted not to approve funding of a buy out. (*Id.* ¶¶ 53-56.)

In 2012 Arundel residents voted against withdrawing from RSU 21. (*Id.* ¶57.)

In 2013 RSU 21 notified the Head of Thornton Academy that it would not renegotiate the Contract, and would allow it to expire. (*Id.* ¶60.)

On March 7, 2016, the RSU 21 Board voted to disallow Arundel students from attending TAMS at public expense. (*Id.* ¶ 67.) The Contract between the Town of Arundel and Thornton Academy expired on June 30, 2016.

Plaintiffs filed a three-count complaint on April 6, 2016, and subsequently have filed two amended complaints.[1]

---

[1] The first amended complaint named ten additional Arundel residents as individual Plaintiffs. Defendants contend that because these additional parties were added to the complaint more than 30 days after the Board's decision, their Rule 80B appeal is time-barred. (Defs.' Mot. Dismiss 2 n.1.) Ideally, Plaintiffs would have sought leave of court before adding parties to the amended complaint. *See Cushing v. Cohen*, 420 A.2d 919, 927 n.7 (Me. 1980) ("Addition of parties by *ex parte* amendment of the pleadings, even when such amendments are allowed as a matter of right before a responsive pleading is served . . . is disfavored and a court order under the more specific provision of Rule 21 is preferred."). However, Rule 15(c) applies even when parties are changed after a statute of limitations has run, and amendments to the plaintiff(s) under Rule 15(c) "should be dealt with liberally." 2 Harvey & Merritt, *Maine Civil Practice* §§ 15.6, 21.2 at 489, 580 (3d, 2011 ed.). The second amended complaint, filed with an agreed-upon motion to amend in November after hearing on Defendants' motion to dismiss, makes several minor changes in Count III to clarify the elements of the equitable estoppel claim asserted. The court has granted the motion to amend.

3

Count I seeks a declaratory judgment pursuant to 14 M.R.S. § 5951 *et seq.* that "RSU 21 and the RSU 21 School Board incorrectly interpreted and applied 20-A M.R.S § 1479(3)(A) in determining that Arundel middle school students lack school choice and do not have the option to attend TAMS, and that RSU 21 and the RSU 21 School Board have the authority to assign future Arundel middle school students to MSK." (Compl. ¶ 74.)

Count II seeks review of the Board's March 2016 decision pursuant to Rule 80B, namely that the actions of "RSU 21 acting through the RSU 21 School Board depriving Arundel middle school students of school choice constitute abuses of discretion, were arbitrary and capricious, were based on errors of law, and were based on findings unsupported by substantial evidence in the record." (Compl. ¶ 78.)

Count III alleges that RSU 21's Superintendent, Board, and agents, as well as other responsible governmental officials, have publicly made representations that Arundel middle school students would continue to have the choice of attending TAMS at public expense after expiration of the Contract; and further that the named individual Plaintiffs have reasonably relied on these statements to their detriment. Count III requests that the court grant judgment in their favor "declaring that Maine law preserves the right of Arundel residents to choose whether their middle school students will be educated at TAMS or MSK," that RSU took "inappropriate and illegal action to terminate the rights of Arundel residents to choose where their middle school students will be educated," and that RSU 21 is equitably estopped form denying Arundel residents the choice of sending their middle school students to TAMS or MSK at public expense. (Am. Compl. ¶¶ 80, 82, 84, 85-88.)

Plaintiffs have filed a motion for trial on the facts under Rule 80B(d) and a motion to specify the course of future proceedings under Rule 80B(i).

4

Defendants filed the instant motion to dismiss Counts II and III as well as an answer and counterclaim against Thornton Academy. The counterclaim requests a declaratory judgment that RSU 21 is not required to fund tuition at TAMS for middle school students from Arundel.

## Conclusions

### A. Motion to Dismiss

#### 1. Count II (Rule 80B Appeal)

Defendants contend that the court lacks subject matter jurisdiction under M.R. Civ. P. 80B to entertain an appeal of the RSU 21 School Board's decision because review is neither authorized by statute nor "otherwise available by law." M.R. Civ. P. 80B(a). There is no statutory right of review in this instance, as Plaintiffs appear to concede.

Review is "otherwise available by law" if it is "in the nature of that formerly available under the common law extraordinary writs, such as certiorari, mandamus or prohibition, adapted to current conditions." *Lyons v. Board of Dir. Of School Admin. Dist. No. 43*, 503 A.2d at 236. In this case, the relevant historical antecedent is the writ of certiorari, which was the common law mechanism employed to "command an inferior court 'to certify up its record of some proceeding, not according to the course of the common law, that it may be seen and determined whether there is any error.'" *Carter v. Wilkins*, 160 Me. 290, 294, 203 A.2d 682, 684 (Me. 1964) (citation omitted).

The prerequisite for invoking the writ of certiorari was that a tribunal whose actions are the subject of review must have acted in a judicial or quasi-judicial capacity. *Id. See also Lyons*, 503 A.2d 233, 236 (Me. 1986); *Dowey v. Sanford Housing Authority*, 516 A.2d 957, 959 (Me. 1986); *North Berwick v. State Board of Education*, 227 A.2d 462, 468 (Me. 1967). Plaintiffs contend that under Law Court precedent, "school board rulings are quasi-judicial in nature and therefore review is 'otherwise available by law' within the

5

meaning of Rule 80B." *Soderstrom v. Maine Sch. Adm. Dist. No. 61*, No. CV-01-095 (Cumberland County), 2001 Me. Super. LEXIS 102. This determination, however, is not so straightforward. *See* M.R. Civ. P. 80B Advisory Committee's Notes to 1983 amend., 3A Harvey & Merritt, *Maine Civil Practice* 530 (3d 2011 ed.) ("Rule 80B Adv. Comm. 1983 Notes") ("determination of when review is 'otherwise available by law' remains a difficult one").

Whether or not an action is quasi-judicial "depends upon the nature of the act performed, rather than on the character of the officer or body performing it." *Carter*, 160 Me. at 294, 203 A.2d at 684. The "nature of the act performed"—the RSU Board's March 7, 2016 review of and decision not to renew the Contract, thereby denying Arundel residents the choice of sending middle school students to TAMS at public expense and mandating instead that they attend MSK—appears to lack a number of attributes associated with a judicial or quasi-judicial proceeding. Apparently the Board did not conduct a hearing involving notice, an opportunity to be heard, the presentation of testimony and evidence, and a determination based on the record compiled. Rather, the Board took up the question at a regularly scheduled public meeting and, acting upon recently received legal advice, put the question to a vote of the Board after limited public input. It is unclear whether there is a transcript or other recording of the meeting. In Defendants' view, the Board did not conduct a hearing, nor was it required to do so; it merely performed an administrative function of assigning students to specific schools. *See* 20-A M.R.S. §1001(8).

Nonetheless, the court determines that the Board's action is subject to review under Rule 80B. Plaintiffs are asserting a substantive right under Maine law to school choice. *See* 20-A M.R.S. §§ 1451(7) and 1479(3)(A). They claim the Board's decision violated this right. That claim distinguishes this case from others in which non-

6

statutory review under Rule 80B has been held to be unavailable. *Compare North Berwick*, 227 A.2d at 468 (State Board of Education's decision on validity of competing elections "was of a judicial character" and thus subject to review via writ of certiorari even though Board carrying out "administrative function") *with Lyons*, 503 A.2d at 236 (School Board did not adjudicate right of plaintiff, and therefore did not act in quasi-judicial manner) *and Dowey*, 516 A.2d at 959 (Plaintiff an employee at will without a statutory, contractual or constitutional right at issue, thus agency did not act in quasi-judicial manner). *Compare also Soderstrom, supra*, 2001 Me. Super. LEXIS 102 (Rule 80B non-statutory right of review of lawfulness of school board's expulsion of student) *and Robey v. Maine Sch. Admin. Dist. No. 6*, No CV-83-106 (York County) 1983 Me. Super. LEXIS 197 (Rule 80B non-statutory right of review of procedural irregularities in school board's process) *with LeBlanc v. Maine Sch. Admin. Dist. No. 71*, No. AP-98-021 (York County) 1998 Me. Super LEXIS 291 (no Rule 80B non-statutory review of school board decision not involving adjudication of a right).

Rule 80B does not create an independent right of review. Yet, even in cases such as this one where there is no statutory right of review and the touchstone for review is the former writ of certiorari, which requires a judicial or quasi-judicial proceeding below as its predicate, courts "should not be rigidly bound by it." 3 Harvey & Merritt, *Maine Civil Practice* 432-33. Review under Rule 80B may be "otherwise available by law" with respect to a case "not previously held to be within [the scope of review of one of the extraordinary writs]" if the court is satisfied that "non-statutory judicial review of executive action in the particular situation is appropriate in light of the necessary deference which a reviewing court must show, both to the proper scope to be allowed to executive action in its own sphere and to the intention of the legislature in setting up the statutory scheme under which the executive

7

agency operates." Rule 80B Adv. Comm. 1983 Notes, *supra*, at 530. The court is mindful that the Legislature has committed to the discretion of the RSU 21 Board a number of administrative functions and duties, including the authority to "determine which students attend each school," 20-A M.R.S. § 1001(8); and that deference is owed to agencies and boards exercising those functions. As noted above, though, the Board, "in the course of performance of its delegated function" may have made a "determination . . . of a judicial character" to the extent Plaintiffs have a right to school choice as they claim, and the Board's decision affected such a claimed right. *See North Berwick*, 227 A.2d 468-69. The court cannot pre-judge the nature and scope of such right, if any, at this stage of the proceeding; and therefore concludes that review under Rule 80B is appropriate in this circumstance to present the issue for judicial consideration.

### 2. Count III (Equitable Estoppel)

To avoid dismissal of the equitable estoppel claim against a governmental entity, the complaint must allege: "(1) the statements or conduct of the governmental official or agency induced [them] to act; (2) the reliance was detrimental; and (3) the reliance was reasonable." *Dep't of Health & Human Servs. v. Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630. In the context of a Rule 12(b)(6) motion the court views a complaint's allegations in the light most favorable to the plaintiff, *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, and will only dismiss a claim "when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244.

The complaint as amended alleges that RSU 21 Board members, administrators and/or their agents, as well as other responsible governmental officials, made numerous public representations that Arundel residents would continue to have the

option of sending their children to TAMS, even after the Contract expired. (Am. Compl. ¶¶ 37-40, 43, 46, 50-52, 55, 60, 62-65.) It further alleges that, in reliance on these statements, the individually named Plaintiffs took one or more of a number of actions, including voting against withdrawal from RSU 21; choosing to move into Arundel; refraining from moving out of towns that are located in RSU 21; and/or declining to pressure the Board to renegotiate or extend the TAMS contract. (*Id.* ¶¶ 85-88.) This is sufficient to avoid dismissal under Rule 12(b)(6), at least as to the individual Plaintiffs named in the complaint. The motion to dismiss Count III will be denied as to the individual Plaintiffs named in the complaint.

Even as amended, however, the complaint does not assert detrimental reliance on the part of Plaintiff Thornton Academy. Accordingly, the motion to dismiss Count III as to Plaintiff Thornton Academy will be granted.

## B.  Motion for Trial on the Facts

Plaintiffs have filed a motion for trial on the facts pursuant to M.R. Civ. P. 80B(d) in connection with their request for Rule 80B review in Count II. They acknowledge that "there really [was] 'no record' established" before the Board because it "adopted a policy" at one of its meetings, and thus their Rule 80B(d) motion allows for the creation of a record upon which the court can review the legality of the Board's action. *See Motion for Trial on the Facts.*

The court's review under Rule 80B is appellate in nature, involving questions of whether the tribunal below abused its discretion, acted arbitrarily and capriciously, made errors of law, or lacked substantial evidence to support its decision. Rule 80B(d) provides a mechanism to "augment the record presented to the reviewing court" with facts not in the record of proceedings below that are "necessary *to the appeal*." *Baker's Table, Inc. v. City of Portland,* 2000 ME 7 ¶ 9, 743 A.2d 237, 240. Rule 80B(d) does not

authorize a trial *de novo* in the reviewing court, nor is it intended to create an entirely new record for reviewing the agency's actions, except with respect to claims involving, for example, procedural irregularities or the integrity of the agency's process (e.g., bias, *ex parte* communications) as to which relevant facts may not be reflected in the agency's record. *Id.*

Count II presents discrete issues of law that should be capable of direct review on a limited, stipulated record. Rule 80B(e)(2) expects the parties to meet "in advance of the time for filing the plaintiff's brief or motion for trial of the facts to agree on the record to be filed." M.R. Civ. P. 80B(e)(2). Before the court rules finally on Plaintiffs' motion for a trial on the facts, the parties shall, consistent with Rule 80B(e)(2) and this order, confer and attempt to agree on a stipulated record so as to allow the court to undertake proper judicial review.

## C. Motion to Specify Future Course of Proceedings

Plaintiffs have also moved pursuant to M.R. Civ. P. 80B(i) for an order to specify the future course of proceedings in connection with the claims asserted in Counts I and III of the complaint. Accompanying the motion is a proposed order setting out a detailed schedule for discovery, motions and other events.

Rule 80B(i) authorizes joinder of independent claims with Rule 80B appeals. M.R. Civ. P. 80B(i). Such claims typically involve private or statutory causes of action that may be related to issues in the Rule 80B appeal but go beyond the relief available under Rule 80B. The joinder of independent claims requires the court to act not only in an appellate capacity with respect to the Rule 80B claims but also as a court of original jurisdiction with respect to the independent claims. *See* Rule 80B Adv. Comm. 1983 Notes, *supra,* at 531.

10

Count I seeks a judgment declaring that the RSU 21 Board "incorrectly interpreted and applied" 20-A M.R.S § 1479(3)(A) when it voted to deny Arundel middle school students the choice to attend TAMS and determined that RSU 21 and its Board have the authority to assign future Arundel middle school students only to MSK. This claim appears to be based upon the same ground as Count II—that the Board erred as a matter of law in interpreting and applying governing statutes—and fundamentally seeks the same relief as Count II—a determination that the Board exceeded its authority and/or took an action that violated Plaintiffs' rights. In effect, it appears to be in the nature of a collateral challenge to the Board's action that duplicates the claim made, and the relief sought, via the request for direct review under Rule 80B in Count II. The issues raised in Count I seem to be subsumed in Count II, and the court is inclined, therefore, to consider them in the context of the Rule 80B appeal rather than as part of an original action.

Count III also seeks a determination that the Board "took inappropriate and illegal actions to terminate the rights of Arundel residents." To this extent, the claim in Count III also appears to overlap Count II. However, Count III goes further, and alleges a claim independent of the issues raised by direct review sought under Rule 80B. Count III invokes the court's equity jurisdiction and seeks a determination that even if the Board's decision was not unlawful, RSU 21 should be estopped from denying Arundel residents the opportunity to continue sending middle school students to TAMS at public expense under the doctrine of equitable estoppel.

The court will defer action on the motion to specify until after counsel have conferred and attempted to stipulate a factual record. The pertinent facts, particularly with respect to the Rule 80B issues and perhaps even with respect to those relevant to the estoppel issue—ought to be reasonably limited, discrete and susceptible to

11

agreement. This order directs the clerk to set a date for conference/hearing shortly after the filing deadline set out below to consider these and other issues. The court will address finally Plaintiffs' motion to specify future course of proceedings at that time.

### Order

In accordance with the foregoing, it is HEREBY ORDERED and the entry will be:

1. Defendants' motion to dismiss Count II of the complaint is DENIED.

2. Defendants' motion to dismiss Count III of the complaint is DENIED as to the individually named Plaintiffs but GRANTED as to Plaintiff Thornton Academy.

3. By March 31, 2017 counsel for the parties shall confer, develop and file consistent with this order:

(i) a stipulated factual record to enable the court to address the issues of law presented by Count II of the Complaint;

(ii) a stipulated factual record to enable the court to address the legal issues presented by Count III of the Complaint, and/or, to the extent there remain disputes with regard to the record that cannot be settled by stipulation, a summary of the areas of dispute; and

(iii) any further requests, motions and/or oppositions pertaining to the motion to specify future course of proceedings, the motion for trial on the facts, and/or this order.

4. The clerk shall set a forty-five (45) minute hearing for the first date available after March 31, 2017 to consider all pending motions and determine the course for future proceedings in this matter.

5. Further consideration of Count I of the complaint (and Defendants' counterclaim for declaratory relief) is stayed, and final action on Plaintiffs' motion to

12

specify the course of proceedings and on Plaintiffs' motion for trial on the facts is deferred, pending hearing on the foregoing date.

The clerk may incorporate this order upon the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

DATE:   January 31, 2017

Wayne R. Douglas
Justice, Superior Court

CV-16-86

ATTORNEYS FOR PLAINTIFFS:
SARA HELLSTEDT
MURRAY PLUMB & MURRAY
75 PEARL ST, P.O. BOX 9785
PORTLAND ME  04104-5085

PATRICIA PEARD
RONALD SCHNEIDER
BERNSTEIN SHUR SAWYER & NELSON
 P O BOX 9729
PORTLAND ME  04104-5029

ATTORNEY FOR DEFENDANTS:
MELISSA HEWEY
DRUMMOND WOODSUM
84 MARGINAL WAY SUITE 600
PORTLAND ME  04101-2480